Roger KELLY, Appellant/Cross–
Appellee,

v.

Russell GAINES and Southwest Guar-
anty Mortgage Corp., Appel-
lees/Cross–Appellants,

and

Robert Thompson and Commercial
Realty Advisors, Inc.,
Appellees.

No. 10–03–00369–CV.

Court of Appeals of Texas,
Waco.

Sept. 28, 2005.

Michael J. Rogers, Michael J. Rogers, PC, Jeff Davis, Cleburne, Rex Davis, Sheehy, Lovelace & Mayfield, Waco, for appellant.

Joseph R. Larsen and Janiece Longoria, Ogden Gibson White Brocks & Longoria, Houston, Richard P. Corrigan, San Antonio, for appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Roger Kelly filed suit against Appellees after Southwest Guaranty Mortgage Corp. failed to fund a $2,010,000 loan to Kelly for which it had previously issued a loan commitment. The trial court granted several summary judgment motions filed by Appellees and rendered a take-nothing judgment in their favor. Kelly contends that the court erred by denying two continuance motions, by granting the summary judgment motions, by denying his motion to compel Russell Gaines to answer certain deposition questions, by denying his motions to reconsider the summary judgment rulings, and by denying his motion for new trial. Gaines and Southwest Guaranty contend in their cross-appeal that the court erred by denying their motion for sanctions, by granting Kelly's summary judgment motion on their counterclaims, and by denying their motion to release certain documents Kelly filed with the court under seal.

We will affirm in part and reverse and remand in part.

### Factual Background

Kelly was involved in litigation regarding a 31–acre tract of land in Burleson used as a softball park and commonly referred to as Cowtown Park. To settle this lawsuit, the parties agreed in December 1997 that Kelly would receive a lease with an option to purchase the property for $1,638,825.

Kelly signed an Advisory Fee Agreement with Commercial Realty Advisors, wherein Kelly stated his desire to obtain "mortgage financing for the purposes of refinancing and developing the Cowtown Park." Commercial Realty agreed "to diligently pursue financing" on Kelly's behalf.

Commercial Realty identified Southwest Guaranty as a possible lender for Kelly. Robert Thompson, Commercial Realty's president, received the necessary loan application documents from Southwest Guaranty and forwarded them to Kelly's attorney Thomas Bullard. Bullard assisted Kelly in completing the documents, then returned them to Thompson who forwarded them to Southwest Guaranty.

Thompson then sent a letter to Kelly advising that he would "no longer be acting as a mortgage broker in [Kelly's] loan application" and that Kelly should thenceforth deal directly with Gaines, Southwest Guaranty's president. According to Gaines, Bullard and Kelly's other attorney, C.W. Stocker, III, advised Gaines in a subsequent conversation that Kelly had an ownership interest in the property, that the loan was for refinancing, and that the softball park had been platted and several lots pre-sold to developers.

Bullard and Stocker pressed Gaines for a loan commitment to show the court in the prior litigation that Kelly had located an interested lender. Southwest Guaranty issued a loan commitment identifying Kelly as the borrower and Kelly's father-in-law Franklin Meeks as a co-borrower. The stated purpose for the contemplated loan was "refinanc[ing]." The commitment had a thirty-day term. The commitment indicated that it must be "fully executed" by the borrower and that the lender's obligations thereunder were subject to the receipt of a satisfactory appraisal, proof of insurance, a title report, and other documentation necessary to ensure the borrower's financial condition.

According to Gaines, when he received the title report indicating that Kelly had no ownership interest in the property, he contacted Bullard and Stocker. Gaines asked them to provide proof of ownership and further information about the platting

and pre-sold lots, which they said they would. Gaines had a telephone conversation with Stocker three days before the loan commitment was to expire. Stocker insisted that Southwest Guaranty fund the loan. Gaines replied that the loan would not be funded without the required documentation. Stocker then threatened to sue if the loan was not funded. Gaines responded that he was no longer interested in pursuing the loan.

### Procedural Background

Shortly after Southwest Guaranty failed to fund the loan in January 1999, Kelly filed suit against Gaines, Southwest Guaranty, Thompson, and Commercial Realty alleging breach of contract, fraud, and negligence. Three months later, Kelly filed an amended petition adding Jeff Thompson and IDC Services, Inc. as defendants [1] and alleging additional claims for conspiracy and conversion. The elected judge recused himself in June 1999, and a retired judge was assigned to the case two weeks later.

In January 2001, Kelly hired new attorneys. In March 2002, the court entered a docket control order, setting the case for trial in July 2002 and establishing various discovery and other deadlines. In April, Gaines and Southwest Guaranty filed a countersuit against Kelly (and a third-party action against Stocker, Bullard, and Meeks) alleging fraud, malicious prosecution, conspiracy, and negligent misrepresentation.

Stocker and Meeks filed motions to dismiss the claims against them because they were served less than ninety days before trial, in contravention of the docket control order. The court cancelled the trial setting, and later denied the motions to dismiss. The court instructed the parties to obtain a new trial setting and negotiate an agreed scheduling order. Gaines and Southwest Guaranty offered a proposed scheduling order which the parties never agreed to.

Gaines and Southwest Guaranty filed a no-evidence summary judgment motion on November 4, 2002. The motion was set for hearing three weeks later. On November 7, Kelly filed a motion to substitute a new attorney for the two who first appeared for him in January 2001. On November 15, Kelly's new counsel filed a verified continuance motion contending that there had not yet been adequate time for discovery and noting that counsel needed more time to familiarize himself with the case. Counsel also filed a response to the summary judgment motion, subject to the continuance motion.

The court denied Kelly's continuance motion and conducted the summary judgment hearing as scheduled. In response, Kelly non-suited his fraud and contract claims. The court granted Gaines's and Southwest Guaranty's summary judgment motion as to Kelly's other claims. The court also entered a new docket control order setting the case for jury trial in July 2003 and requiring discovery to be completed by the end of May 2003.

Kelly then filed a new petition against Gaines and Southwest Guaranty alleging the previously non-suited fraud and contract claims. Rather than docketing this petition as a separate lawsuit, the district clerk filed it among the papers of the original suit. Gaines and Southwest Guaranty filed an answer to these allegations in February 2003.

---

1. Jeff Thompson is the brother of Appellee Robert Thompson. Jeff performed the appraisal of the property on behalf of IDC Services. Kelly ultimately settled with Jeff Thompson and IDC Services.

In March, Stocker and Meeks each filed a traditional and no-evidence summary judgment motion on Gaines's and Southwest Guaranty's counterclaims. Gaines and Southwest Guaranty filed a no-evidence summary judgment motion on Kelly's fraud and contract claims. Thompson and Commercial Realty filed their own no-evidence summary judgment motion on Kelly's fraud and contract claims.

In April, Gaines and Southwest Guaranty non-suited their third-party claims against Stocker and Meeks and later agreed to the dismissal of their third-party claims against Bullard. Kelly filed an amended petition adding a claim for breach of fiduciary duty against Thompson and Commercial Realty.

In May, Thompson and Commercial Realty filed an amended no-evidence summary judgment motion addressing the additional claims raised in Kelly's amended petition. Kelly then filed a second amended petition clarifying his allegations to be claims for fraud and breach of contract against Gaines, Southwest Guaranty, Thompson, and Commercial Realty and a claim for breach of fiduciary duty against Thompson and Commercial Realty.

The hearing on Gaines's and Southwest Guaranty's second no-evidence summary judgment motion was set for May 29. Kelly filed a pleading on May 21 requesting that the hearing be continued to allow further discovery and, subject to the requested continuance, responding to the contentions of the summary judgment motion. The court denied the requested continuance and granted Gaines's and Southwest Guaranty's second no-evidence summary judgment motion on Kelly's fraud and contract claims.

In June, Kelly filed a no-evidence summary judgment motion on Gaines's and Southwest Guaranty's counterclaims. Kelly also filed: (1) a motion to reconsider the prior summary judgment rulings, (2) a response to Thompson's and Commercial Realty's amended no-evidence summary judgment motion, and (3) a motion to supplement the motion to reconsider with Meeks's affidavit. Gaines and Southwest Guaranty filed a response to Kelly's no-evidence summary judgment motion on their counterclaims. Kelly filed a supplemental petition alleging a claim of promissory estoppel against Gaines and Southwest Guaranty. At a June 27 hearing, the court granted Thompson's and Commercial Realty's no-evidence summary judgment motion.

In July, Gaines and Southwest Guaranty filed a summary judgment motion contending that Kelly's promissory estoppel claim was barred by limitations and a motion for sanctions. Kelly filed a response to Gaines's and Southwest Guaranty's summary judgment motion and a second motion to reconsider the court's prior summary judgment rulings. Thompson and Commercial Realty filed a response to Kelly's second motion to reconsider.

In August, Kelly filed a motion for sanctions against Gaines and Southwest Guaranty and a response to Gaines's and Southwest Guaranty's sanctions motion.

In September, the court denied Kelly's motions to reconsider, granted Gaines's and Southwest Guaranty's summary judgment motion on Kelly's promissory estoppel claim, and granted Kelly's summary judgment motion on Gaines's and Southwest Guaranty's counterclaims. The court denied the sanctions motions filed by Kelly and by Gaines and Southwest Guaranty. Thereafter, the court signed its final judgment. Kelly filed a motion for new trial which the court denied in October.

## Issues Presented

Kelly presents eight issues in which he contends the court abused its discretion

by: (1) denying his first continuance motion; (2) granting Gaines's and Southwest Guaranty's first no-evidence summary judgment motion; (3) denying his second continuance motion; (4) granting Gaines's and Southwest Guaranty's second no-evidence summary judgment motion; (5) granting Thompson's and Commercial Realty's no-evidence summary judgment motion; (6) denying his motion to compel Gaines and/or Southwest Guaranty to answer deposition questions regarding the source of funding for the contemplated loan; (7) denying his motions to reconsider the summary judgment rulings; and (8) denying his motion for new trial.

Gaines and Southwest Guaranty contend in their first cross-issue that the court abused its discretion by denying their motion for sanctions. Subject to a reversal and remand on other issues, they contend in their second and third cross-issues that the court erred by granting Kelly's no-evidence summary judgment motion on their counterclaims and by denying their motion to release certain documents Kelly filed with the court under seal.

## Continuance Motions

Kelly contends in his first and third issues respectively that the court abused its discretion by denying his first and second continuance motions.

■ Kelly's first continuance motion rested on essentially two grounds: (1) Kelly had retained a new attorney at about the same time as Gaines's and Southwest Guaranty's first no-evidence summary judgment motion was filed; and (2) Kelly had not had adequate time for discovery.[2]

■ When a continuance request is premised on the withdrawal of counsel, the movant must show that the failure to be represented at trial is not due to his own fault or negligence. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986); *In re Posadas USA, Inc.*, 100 S.W.3d 254, 258 (Tex.App.-San Antonio 2001, orig. proceeding); *St. Gelais v. Jackson*, 769 S.W.2d 249, 253 (Tex.App.-Houston [14th Dist.] 1988, no writ). This principle likewise applies when new counsel is retained shortly before trial. *See St. Gelais*, 769 S.W.2d at 254.

■ Here, Gaines and Southwest Guaranty filed their summary judgment motion more than three and one-half years after Kelly filed suit and more than three years after Kelly filed his first amended petition. Kelly changed attorneys twice during this period. Kelly's newly retained counsel stated at the hearing that he had been in discussions with Kelly about taking the case for two months before the date of the hearing and had discussed the case with Kelly's former counsel and opposing counsel before making a formal appearance on Kelly's behalf. In fact, Gaines and Southwest Guaranty faxed a copy of the summary judgment motion to Kelly's new counsel three days before it was filed and six days before the motion to substitute counsel was filed.

From this procedural history, the court could have concluded that Kelly bore some fault for deciding to change lawyers so close to the date of the summary judgment hearing. Thus, we conclude that the court did not abuse its discretion by denying Kelly's first continuance motion because

---

2. Kelly contends in his brief that the continuance also should have been granted because notice of the summary judgment hearing received by his newly-retained counsel was not effective until the court granted the motion for withdrawal and substitution of counsel, which was less than 21 days before the date of the hearing. However, Kelly did not present this contention to the trial court in his continuance motion or at the hearing. Thus, it has not been preserved for appellate review. *See* Tex.R.App. P. 33.1(a)(1)(A).

Kelly had only recently retained new counsel. *See St. Gelais,* 769 S.W.2d at 253–54 (no abuse of discretion in denying continuance where new counsel retained only one week before trial).

Kelly also contends that the court abused its discretion by denying his first continuance motion because there had not been adequate time for discovery. The primary factors to consider when determining whether there has been adequate time for discovery are: the nature of the case, the nature of the evidence necessary to controvert the no-evidence motion, and the length of time the case had been active. *McMahan v. Greenwood,* 108 S.W.3d 467, 498 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *Trostle v. Trostle,* 77 S.W.3d 908, 917 (Tex.App.-Amarillo 2002, no pet.); *see also Restaurant Teams Intl., Inc. v. MG Securities Corp.,* 95 S.W.3d 336, 339 (Tex.App.-Dallas 2002, no pet.); *Martinez v. City of San Antonio,* 40 S.W.3d 587, 591 (Tex.App.-San Antonio 2001, pet. denied). Other factors to consider include: the amount of time the no-evidence motion had been on file, whether the movant had requested stricter time deadlines for discovery, the amount of discovery that had already taken place, and whether the discovery deadlines that are in place were specific or vague. *Id.*

The primary factors weigh in favor of the court's ruling. Because of the numerous claims, counterclaims, and third-party claims pleaded, the case is somewhat complex. Kelly notes that Gaines and Southwest Guaranty had filed their countersuit and third-party action only seven months before the summary judgment hearing. Thus, the first factor arguably favors Kelly.

At issue in the summary judgment motion were Kelly's five claims against Gaines and Southwest Guaranty (breach of contract, fraud, negligence, conspiracy, and conversion), whether Thompson acted as Gaines's and/or Southwest Guaranty's agent, and whether Kelly was entitled to exemplary damages because Gaines and/or Southwest Guaranty acted with malice. The motion adequately identifies the elements of each claim or contention for which Gaines and Southwest Guaranty alleged that there was no evidence. With minimal discovery, Kelly would have been able to respond by affidavit with some evidence for each of the challenged elements, assuming such evidence existed. *See Restaurant Teams Intl.,* 95 S.W.3d at 339–40; *Dickson Constr., Inc. v. Fid. & Deposit Co. of Md.,* 5 S.W.3d 353, 356 (Tex.App.-Texarkana 1999, pet. denied). This is particularly true because Kelly is presumed to have investigated his case before filing suit. *See Restaurant Teams Intl.,* 95 S.W.3d at 340; *Martinez,* 40 S.W.3d at 591. Thus, the second factor tends to favor the court's ruling.

As noted, Kelly's suit had been pending for more than three years. This clearly favors the court's ruling. Thus, two of the three primary factors weigh in favor of the court's ruling. However, three of the remaining four factors weigh in Kelly's favor.

Gaines's and Southwest Guaranty's summary judgment motion had been on file for the minimum time allowed. Thus, this factor favors Kelly.

There were no discovery deadlines in place at the time the summary judgment motion was pending. Gaines and Southwest Guaranty had tried to secure an agreement of the parties on discovery deadlines and a trial setting, but none was reached. Because the discovery deadlines were unclear when Gaines and Southwest Guaranty filed their summary judgment motion, it could be argued that they implicitly sought stricter deadlines. Thus,

these factors favor Kelly. *See Restaurant Teams Intl.*, 95 S.W.3d at 341–42.

■ For most of the time period preceding the summary judgment hearing, little discovery was conducted. Discovery did not begin in earnest until after entry of the docket control order. Kelly suggests that, because Southwest Guaranty was without counsel from June 2001 to April 2002, "no action could be taken by or against Southwest Guaranty" during that period.[3] We disagree.

■ The rules clearly permit discovery to be served on any person or entity, regardless of whether they are represented by counsel. *See e.g.* TEX.R. CIV. P. 191.3(a)(2). It would then be incumbent on the recipient of the discovery to take the steps necessary to answer the discovery or suffer the consequences of failing to respond.

Kelly failed to diligently pursue discovery during most of the three-year period before Gaines and Southwest Guaranty filed their summary judgment motion. Therefore, this factor favors the court's ruling. *See Restaurant Teams Intl.*, 95 S.W.3d at 341.

■ Quantitatively, the factors overall are fairly evenly distributed for and against the court's ruling. However, the fact that Kelly failed to diligently pursue discovery despite having three years to do so and the fact that Kelly's claims do not present novel legal theories and could have survived a summary judgment motion with minimal investigation and discovery, weigh heavily in favor of the court's ruling. Accordingly, the court did not abuse its discretion by denying Kelly's first continuance motion, and we overrule his first issue. *See McMahan*, 108 S.W.3d

at 498–99; *Trostle*, 77 S.W.3d at 917–18; *Dickson Constr.*, 5 S.W.3d at 356–57.

■ Kelly contends in his third issue that the court abused its discretion by denying his second continuance motion. However, he did not verify his second continuance motion. Therefore, he did not preserve this issue for appellate review. *See Watson v. Dallas Indep. Sch. Dist.*, 135 S.W.3d 208, 227 (Tex.App.-Waco 2004, no pet.); *Tempay, Inc. v. TNT Concrete & Constr., Inc.*, 37 S.W.3d 517, 520–21 (Tex. App.-Austin 2001, pet. denied); *Green v. City of Friendswood*, 22 S.W.3d 588, 594 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). Accordingly, we overrule Kelly's third issue.

### First No–Evidence Summary Judgment Motion

Kelly contends in his second issue that the court erred by sustaining Gaines's and Southwest Guaranty's first no-evidence summary judgment motion. Because of Kelly's non-suit, this motion challenged Kelly's claims against Gaines and Southwest Guaranty for negligence, conspiracy, and conversion, whether Thompson acted as Gaines's or Southwest Guaranty's agent, and whether Kelly was entitled to exemplary damages because Gaines and/or Southwest Guaranty acted with malice.

We apply the same standard in reviewing a no-evidence summary judgment as we would in reviewing a directed verdict. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex.2003); *Watson*, 135 S.W.3d at 219. Thus, "[w]e review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences." *Id.* A no-evidence summary judgment will be defeated if the

---

**3.** Kelly makes a similar observation with regard to Gaines's status as a pro se litigant during this period, but Kelly does not allege

that he could take no action against Gaines during this period.

non-movant produces more than a scintilla of probative evidence to raise a genuine issue of material fact on the elements challenged by the movant. *Id.*

We consider only those grounds expressly presented by the movant in the summary judgment motion and by the non-movant in its response. *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 343 (Tex.1993); *Protective Life Ins. Co. v. Russell,* 119 S.W.3d 274, 285 (Tex.App.-Tyler 2003, pet. denied); *Fletcher v. Edwards,* 26 S.W.3d 66, 74 (Tex.App.-Waco 2000, pet. denied).

"When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion." *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995); *Watson,* 135 S.W.3d at 219.

Gaines and Southwest Guaranty alleged in their first no-evidence summary judgment motion that Kelly could produce no evidence to prove the following elements of his negligence claim: (1) duty; (2) breach; (3) proximate cause; and (4) damages. In response, Kelly asserted that, if a jury refused to find that Gaines and Southwest Guaranty were fraudulent in the manner in which they failed to loan him the monies contemplated by the loan commitment, then they "were negligent in failing to do that which a reasonabl[y] prudent person or organization would have done under the same or similar circumstances."

■■■■ The only basis asserted by Kelly to establish that Gaines and Southwest Guaranty owed him a legal duty was their obligations under the loan commitment. However, a properly-executed loan commitment is a binding contract. *See e.g. Gibson v. Drew Mortg. Co.,* 696 S.W.2d 211, 213 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.). "[I]f the defen-

dant's conduct ... would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *DeWitt County Elec. Co-op., Inc. v. Parks,* 1 S.W.3d 96, 105 (Tex.1999) (quoting *Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991); *OXY USA, Inc. v. Cook,* 127 S.W.3d 16, 20 (Tex.App.-Tyler 2003, pet. denied)). Thus, Kelly failed to present any evidence that Gaines and Southwest Guaranty owed him a legal duty other than the duties they owed him under the contract. Accordingly, the court properly granted the summary judgment motion as to Kelly's negligence claim. *See* TEX.R. CIV. P. 166a(i); *Martinez v. Abbott Laboratories,* 146 S.W.3d 260, 272 (Tex.App.-Fort Worth 2004, pet. denied); *Williams v. Bank One, Tex., N.A.,* 15 S.W.3d 110, 117 (Tex.App.-Waco 1999, no pet.).

■■■■ Kelly did not respond to Gaines's and Southwest Guaranty's allegations that he could produce no evidence to support various elements of his conspiracy and conversion claims. Accordingly, the court properly granted the summary judgment motion as to these claims. *Id.*

■■■■ Gaines and Southwest Guaranty alleged that Kelly could produce no evidence that anyone was acting as their agent "for purposes of negotiating the loan." Kelly responded with evidence he contends raises a genuine issue of material fact on the question of whether Thompson acted as Gaines's and Southwest Guaranty's agent. Kelly's evidence consists of his own affidavit and that of his attorney Bullard.

Kelly stated in his affidavit that:

● Thompson "represented to me that he was working for Russell Gaines. Further, the loan application and associated paperwork for the loan was submit-

ted by Mr. Thompson on Southwest Guaranty Mortgage Corporation letterhead";

- "Thompson called me and advised me that Russell Gaines required a $3,000.00 'good faith' deposit";

- Thompson advised Bullard that the initial paperwork would need to be changed to reflect that the nature of the transaction was a refinance rather than a purchase;

- Thompson advised Bullard that Gaines and Southwest Guaranty needed an appraisal done on the property; and

- Thompson advised Kelly that Gaines would have to approve the appraiser chosen.

Bullard stated in his affidavit that:

- he "personally relayed to Mr. Thompson all facts surrounding Mr. Kelly's interest in [the] property";

- "Thompson forwarded to [him], for completion by Mr. Kelly, loan paperwork and associated documents under the letterhead of S.G.M., which stood for Southwest Guaranty Mortgage Corporation";

- he assisted Kelly in completing the paperwork "and returned all documents to Robert Thompson for forwarding on to Russell Gaines and Southwest Guaranty";

- "[a]t all times during the loan application process, Robert Thompson represented to me that he was working for Russell Gaines, and all of the application paperwork was submitted on Southwest Guaranty Mortgage Corporation letterhead";

- Thompson advised him that the initial paperwork would need to be changed to reflect that the nature of the transaction was a refinance rather than a purchase;

- Thompson advised him that Gaines and Southwest Guaranty needed an appraisal done on the property;

- Gaines advised him that he did not have all the necessary paperwork, to which Bullard replied that he had forwarded the paperwork to Gaines's agent Thompson;

- Gaines did not deny that Thompson was his agent; and

- Bullard is "personally familiar with the fact that all loan paperwork was sent directly to Russell Gaines."

Viewed in a light most favorable to Kelly, Bullard's and Kelly's affidavits provide evidence that Gaines and Southwest Guaranty relied on Thompson as an intermediary to process their loan paperwork with Kelly and to explain to Kelly their requirements for securing the loan. According to Bullard's affidavit, Gaines did not deny that Thompson was Gaines's agent when Bullard referred to him as such.

> Apparent authority in Texas is based on estoppel. It may arise either from a principal knowingly permitting an agent to hold herself out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority she purports to exercise.

*Baptist Meml. Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 949 (Tex.1998); *accord Walker Ins. Servs. v. Bottle Rock Power Corp.,* 108 S.W.3d 538, 550–51 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

Viewed in a light most favorable to Kelly, he presented more than a scintilla of evidence on the issue of whether Thompson was an agent of Gaines and Southwest Guaranty. *See Walker Ins. Servs.,* 108 S.W.3d at 551–52. Accordingly, the court

erred by granting the summary judgment motion on the issue of agency.

 Gaines and Southwest Guaranty alleged that Kelly could produce no evidence of malice to support an award of exemplary damages. Kelly did not respond to this allegation. However, malice is not the only basis on which exemplary damages may be awarded. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(A) (Vernon Supp.2004–2005). Rather, exemplary damages may be awarded in a proper case if the plaintiff shows fraud, malice, or gross negligence on the part of the defendant. *Id.*

Kelly alleged in his first amended petition that he is entitled to exemplary damages because the defendants acted with fraud and gross negligence. Thus, even though Kelly produced no evidence of malice, his claim for exemplary damages survived Gaines's and Southwest Guaranty's no-evidence summary judgment motion because such damages may be awarded on a finding of fraud or gross negligence. Accordingly, the court erred by granting the summary judgment motion on Kelly's claim for exemplary damages.

In summary, the court properly granted Gaines's and Southwest Guaranty's first no-evidence summary judgment motion on Kelly's claims for negligence, conspiracy, and conversion. The court erred by granting the motion on Kelly's allegation that Thompson acted as Gaines's and/or Southwest Guaranty's agent and on Kelly's claim for exemplary damages. Accordingly, we sustain Kelly's second issue in part and overrule it in part.

## Second No–Evidence Summary Judgment Motion

Kelly contends in his fourth issue that the court erred by granting Gaines's and Southwest Guaranty's second no-evidence summary judgment motion on his contract and fraud claims.

Gaines and Southwest Guaranty contended in this motion that Kelly could produce no evidence to support the following elements of his contract claim: (1) that the parties ever reached agreement on all material terms related to the contemplated loan; (2) that Gaines acted in his individual capacity with respect to the negotiation or execution of the loan commitment; (3) that Gaines is a party to the loan commitment; (4) that Kelly performed all conditions precedent; and (5) that Kelly suffered damages.

 A loan commitment is a unilateral or bilateral agreement by a lender to make a loan. *See Valdina Farms, Inc. v. Brown, Beasley & Assocs., Inc.,* 733 S.W.2d 688, 693–94 (Tex.App.-San Antonio 1987, no writ); *B.F. Saul Real Est. Inv. Trust v. McGovern,* 683 S.W.2d 531, 534–35 (Tex.App.-El Paso 1984, no writ); *Black's Law Dictionary* 955 (Bryan A. Garner ed., 8th ed., West 2004).[4] The material terms of a contract to loan money are (1) the loan amount, (2) the maturity date, (3) the interest rate, and (4) the repayment terms. *See T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992); *Beal Bank, S.S.B. v. Schleider,* 124 S.W.3d 640, 653 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

 Here, the loan commitment contains these four elements. The contemplated loan would be for $2,010,000. The

---

**4.** *Black's* defines a "loan commitment" as "[a] lender's binding promise to a borrower to lend a specified amount of money at a certain interest rate, usu. within a specified period and for a specified purpose (such as buying real estate)." *Blacks Law Dictionary* 955 (Bryan A. Garner ed., 8th ed., West 2004).

note would have a one-year term and would bear interest at the fixed annual rate of 14.5%. And by describing the loan type as a balloon, the parties contemplated that Kelly would make monthly interest payments and pay the principal balance at the end of the loan's term. *See Black's Law Dictionary* at 1088 (defining "balloon note");[5] *cf. T.O. Stanley Boot Co.,* 847 S.W.2d at 221–22 (finding no contract where plaintiffs presented evidence of only one element of the contract to loan money).

■ In Kelly's summary judgment response, he contended that Gaines may be held personally liable on the commitment because Southwest Guaranty is Gaines's alter ego. However, Kelly does not make this assertion in his appellate briefs. Because Kelly's appellate briefs do not challenge the court's finding on the issue of whether Gaines is personally liable on the loan commitment, we must uphold the court's ruling on this issue.[6] *See Star–Telegram,* 915 S.W.2d at 473; *Watson,* 135 S.W.3d at 219.

■ In Kelly's summary judgment response, he contended that Southwest Guaranty had failed to specifically deny in its petition that Kelly had not performed any particular conditions precedent. Kelly noted that, when a plaintiff pleads generally that all conditions precedent have been performed (as Kelly did in his second amended petition), Rule of Civil Procedure 54 requires a defendant to specifically deny particular conditions precedent before the plaintiff will be required to prove them.[7] However, Kelly does not make this assertion in his appellate briefs. Because Kelly does not make this argument on appeal and because his summary judgment response did not present any other responsive argument to Southwest Guaranty's contention with regard to the performance of conditions precedent, we must uphold the court's ruling as to Kelly's failure to perform the necessary conditions precedent. *See Star–Telegram,* 915 S.W.2d at 473; *Watson,* 135 S.W.3d at 219.

Accordingly, the court did not err by granting Gaines's and Southwest Guaranty's second no-evidence summary judgment motion on Kelly's contract claim.

Gaines and Southwest Guaranty contended in the summary judgment motion that Kelly could produce no evidence to support the following elements of his fraud claim: (1) that Gaines or Southwest Guaranty made any representations or omissions of material facts; (2) that Kelly relied on any alleged representations; (3) that Gaines or Southwest Guaranty committed any intentional act; (4) that Kelly suffered any damages because of any alleged misrepresentations; and (5) that Kelly suffered "any damages at all."

■ To prove a common-law fraud claim, a plaintiff must show: "(1) that a

---

5. *Black's* defines a "balloon note" as "[a] note requiring small periodic payments but a very large final payment. The periodic payments usu. cover only interest, while the final payment (the balloon payment) represents the entire principal." *Id.* at 1088.

6. Because we are affirming the court's ruling that Gaines is not personally liable, we refer to only Southwest Guaranty hereinafter when discussing the merits of Kelly's contract claim.

7. Rule 54 provides:

> In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so plead, the party so pleading same shall be required to prove only such of them as are specifically denied by the opposite party.

TEX.R. CIV. P. 54.

material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 211 n. 45 (Tex.2002) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex.2001) (orig.proceeding)); *Clifton v. Hopkins*, 107 S.W.3d 755, 757 (Tex.App.-Waco 2003, no pet.).

■■■■ With regard to evidence of a material misrepresentation, Kelly responded that Thompson, as Gaines's and Southwest Guaranty's agent, represented to him that the loan was "a done deal." It is undisputed that the contemplated loan was not funded. We have already determined that a genuine issue of material fact remains on the question of whether Thompson was the agent of Gaines and/or Southwest Guaranty. Viewed in a light most favorable to Kelly, he produced more than a scintilla of evidence on the issue of material misrepresentation. *See Rosas v. Hatz*, 147 S.W.3d 560, 564–65 (Tex.App.-Waco 2004, no pet.).

■■■■ With regard to evidence of reliance, Kelly responded that he relied on the alleged misrepresentation to his detriment because he did not seek other sources of funding. Viewed in a light most favorable to Kelly, he produced more than a scintilla of evidence on the issue of reliance. *See Lyda Constructors, Inc. v. Butler Mfg. Co.*, 103 S.W.3d 632, 638–39 (Tex.App.-San Antonio 2003, no pet.); *Herrin v. Med. Protective Co.*, 89 S.W.3d 301, 306–07 (Tex. App.-Texarkana 2002, pet. denied).

■■■■ With regard to evidence of intent, Kelly responded that Thompson's representation that the loan was "a done deal" led him "to assume that the Defendants would in fact fund the loan." Viewed in a light most favorable to Kelly, he produced more than a scintilla of evidence that Thompson, as Gaines's and Southwest Guaranty's agent, intended for Kelly to act on the representation. *See Kelly v. Rio Grande Computerland Group*, 128 S.W.3d 759, 770 (Tex.App.-El Paso 2004, no pet.); *Alford v. Thornburg*, 113 S.W.3d 575, 587–88 (Tex.App.-Texarkana 2003, no pet.).

■■■■ With regard to evidence of damages, Kelly contends that, because of Gaines's and/or Southwest Guaranty's failure to fund the contemplated loan, he was forced to find alternate funding, which resulted in a diminution of the ownership interest he otherwise would have held in the Cowtown Park.

> Generally, when ... fraud is associated with the purchase or transfer of property, the victim is entitled to recover the difference between the value of that parted with and that received. In addition, the victim is also entitled to recover for pecuniary loss suffered otherwise as a consequence of his reliance upon the misrepresentation.

*Tex. Commerce Bank Reagan v. Lebco Constructors, Inc.*, 865 S.W.2d 68, 73 (Tex. App.-Corpus Christi 1993, writ denied).

Kelly's evidence that the failure to fund the contemplated loan diminished his ownership interest in the Cowtown Park is more than a scintilla of evidence that he suffered damages as a result of Gaines's and Southwest Guaranty's alleged fraudulent conduct.

In summary, because Kelly presented more than a scintilla of evidence on each of the elements of his fraud claim challenged in Gaines's and Southwest Guaranty's second no-evidence summary judgment motion, the court erred by granting the mo-

tion on Kelly's fraud claim. Conversely, the court properly granted the motion as to Kelly's contract claim. Accordingly, we sustain Kelly's fourth issue in part and overrule it in part.

### Thompson's And Commercial Realty's No–Evidence Summary Judgment Motion

Kelly contends in his fifth issue that the court erred by sustaining Thompson's and Commercial Realty's no-evidence summary judgment motion on Kelly's claims against them for breach of contract, fraud, and breach of fiduciary duty; on Kelly's allegation that Thompson and/or Commercial Realty were agents of Gaines and/or Southwest Guaranty; and on Kelly's allegation that Commercial Realty is Thompson's alter ego.

■ Thompson and Commercial Realty contended in their summary judgment motion that Kelly could produce no evidence that Commercial Realty is the alter ego of Thompson. Kelly responded with evidence that Thompson is the sole shareholder, officer, and director of Commercial Realty and controls the corporate bank account. However, Kelly did not provide a single reference to any document attached to his response to substantiate these allegations. Kelly's response is thirty-one pages long, excluding the signature page and attachments. There are 526 pages of documents appended to Kelly's response.

Because Kelly attached a voluminous series of documents to his summary judgment response and did not identify any particular evidence to support his conten-

tion that Commercial Realty is the alter ego of Thompson, the court did not err by granting Thompson's and Commercial Realty's no-evidence summary judgment motion on Kelly's alter ego allegation. *See Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 81 (Tex.1989); *Guthrie v. Suiter,* 934 S.W.2d 820, 825–26 (Tex.App.-Houston [1st Dist.] 1996, no writ); *cf. Barraza v. Eureka Co.,* 25 S.W.3d 225, 228–30 (Tex.App.-El Paso 2000, pet. denied) (such specificity not required where summary judgment evidence consisted of only 278 pages).

■ In response to Thompson's and Commercial Realty's contentions regarding Kelly's contract claim, Kelly identified the summary judgment evidence attached to his response in general terms.[8] Kelly then recites six "disputed fact issues" but does not provide a single reference to any document attached to his response to substantiate the allegedly "disputed fact issues." Because Kelly attached a voluminous series of documents to his summary judgment response and did not identify any particular evidence to support his contention that genuine issues of material fact exist on the contested elements of his contract claim, the court did not err by granting Thompson's and Commercial Realty's no-evidence summary judgment motion on Kelly's contract claim. *See Rogers,* 772 S.W.2d at 81; *Guthrie,* 934 S.W.2d at 825–26.

■ Thompson and Commercial Realty contended in their summary judgment motion that Kelly could produce no evidence to support the following elements of his fraud claim against them: (1) that Thomp-

---

**8.** For example, "Non–Movant, Roger Kelly, claims a genuine issue of material fact exists as to Non–Movant's claim of Breach of Contract—and submits affidavits of Kelly, Bullard, Meeks, discovery in the form of Movants' responses to Interrogatories, documentary evidence, Non–Movant's Second Amended Petition and Movants pleadings, as summary judgment evidence, referenced in an appendix attached hereto, filed with this response and incorporated by such reference for all purposes as if recited verbatim herein."

son or Commercial Realty made any representations or omissions of material facts; (2) that Kelly relied on any alleged representations; (3) that Thompson or Commercial Realty committed any intentional act; (4) that Kelly suffered any damages because of any alleged misrepresentations; (5) that Thompson or Commercial Realty made any representation to Kelly with intent to deceive him; and (6) that Kelly suffered "any damages at all."

With regard to evidence of reliance, Kelly contends in his appellate briefs that a jury "could well determine [that Thompson's representation that the loan was 'a done deal' was] justifiably relied upon by Kelly." However, Kelly's summary judgment response does not address the reliance element of his fraud claim. Accordingly, the court properly granted the summary judgment motion as to Kelly's fraud claim against Thompson and Commercial Realty. *See* TEX.R. CIV. P. 166a(i); *Martinez,* 146 S.W.3d at 272; *Williams,* 15 S.W.3d at 117.

Thompson and Commercial Realty contended in their summary judgment motion that Kelly could produce no evidence to support the following elements of his breach of fiduciary duty claim against them: (1) that Commercial Realty[9] failed to obtain a loan commitment for Kelly; (2) that Commercial Realty knew that Southwest Guaranty lacked sufficient resources to fund the contemplated loan; (3) that Commercial Realty has any special relationship with Kelly which would give rise to a fiduciary duty; and (4) that Commercial Realty acted as Kelly's agent after December 11, 1998.

■ The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant, (2) the defendant must have breached its fiduciary duty to the plaintiff, and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant. *See Punts v. Wilson,* 137 S.W.3d 889, 891 (Tex.App.-Texarkana 2004, no pet.); *accord Abetter Trucking Co. v. Arizpe,* 113 S.W.3d 503, 508 (Tex. App.-Houston [1st Dist.] 2003, no pet.).

■ With regard to evidence of a fiduciary relationship, Kelly responded that the Advisory Fee Agreement made Commercial Realty his agent. A principal-agent relationship constitutes a fiduciary relationship as a matter of law. *See Shands v. Tex. St. Bank,* 121 S.W.3d 75, 77 (Tex.App.-San Antonio 2003, pet. denied); *Exxon Corp. v. Breezevale Ltd.,* 82 S.W.3d 429, 443 (Tex.App.-Dallas 2002, pet. denied); *see also Johnson,* 73 S.W.3d at 200. Thus, Kelly produced more than a scintilla of evidence that Commercial Realty had a fiduciary relationship with him.

■ On the issue of whether Commercial Realty breached its fiduciary duty, it is undisputed that Commercial Realty obtained a loan commitment for Kelly. Kelly, however, argues that Commercial Realty breached its fiduciary duty because Commercial Realty knew (or should have known) that Southwest Guaranty did not have adequate resources to fund the contemplated loan.

■ In addition to any specific duties required by an agreement giving rise to a fiduciary relationship, a fiduciary owes at a minimum a duty of good faith and fair dealing. *See Crim Truck & Tractor Co. v. Navistar Intl. Transp. Corp.,* 823 S.W.2d 591, 594 (Tex.1992); *Punts,* 137 S.W.3d at 892; *Abetter Trucking Co.,* 113 S.W.3d at

---

9. Because we have affirmed the court's ruling that Commercial Realty is not Thompson's alter ego, we refer to only Commercial Realty hereinafter when discussing the merits of Kelly's breach of fiduciary duty claim.

508. The Advisory Fee Agreement required Commercial Realty "to diligently pursue the financing on behalf of [Kelly]." Thus, it may be implied from the Advisory Fee Agreement, particularly when viewed in a light most favorable to Kelly, that Commercial Realty's duty of good faith and fair dealing required it to seek a lender which was capable of funding the contemplated loan.

On the issue of whether Commercial Realty breached its fiduciary duty however, Kelly produced no summary judgment evidence that Commercial Realty knew or had reason to know that Southwest Guaranty lacked sufficient resources to fund the contemplated loan. Accordingly, the court properly granted the summary judgment motion as to Kelly's claim for breach of fiduciary duty.

Thompson and Commercial Realty contended in their summary judgment motion that Kelly could produce no evidence that they or either of them acted as agents for Gaines and/or Southwest Guaranty. Kelly responded with the same evidence he offered in response to Gaines's and Southwest Guaranty's summary judgment motion on this issue. Thus, as we have held hereinabove, Kelly presented more than a scintilla of evidence on the issue of whether Thompson was an agent of Southwest Guaranty. *See Walker Ins. Servs.*, 108 S.W.3d at 551–52.

In summary, because Kelly failed to specify the particular evidence responsive to Thompson's and Commercial Realty's summary judgment contentions regarding Kelly's contract claim and Kelly's allegation that Commercial Realty is the alter ego of Thompson, the court properly granted the motion as to these contentions. Because Kelly failed to address the reliance element of his fraud claim in the summary judgment response and because he failed to present evidence that Com-

mercial Realty breach its fiduciary duty, the court properly granted the motion as to Kelly's fraud and breach of fiduciary duty claims. Conversely, because Kelly provided more than a scintilla of evidence on the issue of whether Thompson was the agent of Gaines and/or Southwest Guaranty, the court erred by granting the motion on this contention. Accordingly, we sustain Kelly's fifth issue in part and overrule it in part.

### Motion To Compel

■■■ Kelly contends in his sixth issue that the court abused its discretion by denying his motion to compel Gaines to answer deposition questions regarding the source of funding for the contemplated loan. Gaines and Southwest Guaranty respond that the information sought (1) is not relevant, (2) is "a closely held secret [and] proprietary," and (3) "revealing that information would be detrimental to the business relationship."

Neither Gaines nor Southwest Guaranty filed a response to Kelly's motion to compel. The court heard the motion to compel together with Kelly's second continuance motion and Gaines's and Southwest Guaranty's second no-evidence summary judgment motion. At this hearing, Kelly argued that Gaines should be compelled to answer the question because it is relevant to the issue of whether Southwest Guaranty had adequate resources to fund the contemplated loan. Kelly explained that this is relevant to his fraud claim because it would tend to show whether Southwest Guaranty intended to perform when it made the alleged representation.

However, the Supreme Court has held that this type of evidence "is so weak that it constitutes no evidence" of a bank's intent not to fund an allegedly promised loan. *See T.O. Stanley Boot Co.*, 847 S.W.2d at 222; *accord Beal Bank*, 124

S.W.3d at 649–50. Thus, the court did not abuse its discretion by denying Kelly's motion to compel. Accordingly, we overrule Kelly's sixth issue.

### Motions To Reconsider/Motion For New Trial

Kelly contends in his seventh and eighth issues respectively that the court abused its discretion by denying his motions to reconsider its prior summary judgment rulings and by denying his motion for new trial.

■ After a court grants a summary judgment motion, the court generally has no obligation to consider further motions on the issues adjudicated by the summary judgment. *See Methodist Hosps. of Dallas v. Corporate Communicators, Inc.*, 806 S.W.2d 879, 883 (Tex.App.-Dallas 1991, writ denied); *Martin v. 1st Republic Bank, Ft. Worth, N.S.*, 799 S.W.2d 482, 488–89 (Tex.App.-Fort Worth 1990, writ denied). A review of the contentions in Kelly's brief regarding each of the claims adjudicated by the summary judgments confirms that no abuse of discretion occurred.

■ Regarding Kelly's negligence, conspiracy, and conversion claims, his brief cites no additional evidence beyond that available to him when the court granted Gaines's and Southwest Guaranty's first no-evidence summary judgment motion.

■ Regarding Kelly's contract claim against Gaines and Southwest Guaranty, his brief cites a second affidavit signed by his own attorney Bullard, excerpts from Thompson's and Gaines's depositions, and an affidavit signed by his father-in-law Meeks as "additional" evidence. However, Bullard's second affidavit does not vary appreciably from the one Kelly offered in

support of his response to Gaines's and Southwest Guaranty's first no-evidence summary judgment motion. Moreover, Kelly indisputably had over three years to depose Gaines and Thompson and secure necessary evidence from his father-in-law but failed to do so.

Regarding Kelly's fraud claim against Gaines and Southwest Guaranty, his brief cites Bullard's second affidavit, Kelly's own second affidavit, and excerpts from Kelly's, Bullard's, and Thompson's depositions as "additional" evidence.

Regarding Kelly's claims against Thompson and Commercial Realty, his brief cites no additional evidence beyond that which was available when he responded to Thompson's and Commercial Realty's summary judgment motion.

Accordingly, we cannot say that the court abused its discretion by denying Kelly's motions to reconsider its summary judgment rulings and his motion for new trial. *See Methodist Hosps. of Dallas*, 806 S.W.2d at 883; *Martin*, 799 S.W.2d at 488–89. Thus, we overrule Kelly's seventh and eighth issues.

### Denial of Sanctions

■ Gaines and Southwest Guaranty contend in their first cross-issue [10] that the court abused its discretion by denying their motion for sanctions because of Kelly's production of Meek's affidavit after the court had granted two summary judgments in their favor. Gaines and Southwest Guaranty contend that Kelly and his counsel "either deliberately withheld discoverable evidence or created a missing piece of evidence."

One of the issues raised by Gaines and Southwest Guaranty in their second no-

---

**10.** Pursuant to Rule of Appellate Procedure 25.1(c), Gaines and Southwest Guaranty filed their own notice of appeal to properly perfect their cross-appeal.

evidence summary judgment motion was that Kelly's contract claim should fail because Meeks never signed the commitment. Gaines and Southwest Guaranty had served a request for production on Meeks when he was a party to the suit seeking "all documents, including correspondence or other records of communications, related to the sale or attempted sale or purchase or attempted purchase of the [Cowtown Park] since 1990." Meeks responded that he had no items responsive to this request.

The court granted Gaines's and Southwest Guaranty's no-evidence summary judgment motion on Kelly's contract claim against them on May 29, 2003. Kelly filed his original motion to reconsider this ruling on June 16. Kelly included an affidavit from Meeks dated June 18, 2003 in his response to Thompson's and Commercial Realty's no-evidence summary judgment motion, which Kelly filed on June 19. Kelly filed a motion to supplement his motion to reconsider the ruling on Gaines's and Southwest Guaranty's summary judgment with Meeks's affidavit on June 27. Gaines and Southwest Guaranty then filed their motion for sanctions. They contend that they are entitled to sanctions because Kelly and his counsel "either deliberately withheld discoverable evidence or created a missing piece of evidence."

 We review a trial court's ruling on a sanctions motion under an abuse-of-discretion standard. *Cire v. Cummings,* 134 S.W.3d 835, 838 (Tex.2004). A sanction must be "just," which means it "must be directed against the abuse and toward remedying the prejudice caused to the innocent party, and the sanction should be visited upon the offender. The trial court must attempt to determine whether the offensive conduct is attributable to counsel only, to the party only, or to both." *Spohn Hosp. v. Mayer,* 104 S.W.3d 878, 882 (Tex.

2003) (per curiam) (citing *TransAmerican Nat. Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991) (orig.proceeding)).

Kelly responds that Meeks properly responded to the request for production at issue because counsel construed the request as seeking only "correspondence or other records of communications," which a letter of commitment is arguably not. In addition, Gaines's and Southwest Guaranty's own brief reflects their recognition that primary responsibility for any wrongful conduct in this regard lies with Meeks:

> The evidence before the Court in the form of Dr. Meeks' affidavit and his responses to the requests for production can only lead to one of two conclusions. The first being that *Dr. Meeks engaged in a discovery abuse* by failing to turn over responsive documents to a properly served request for production or *he* [Dr. Meeks] *has filed a false statement under oath to the Court.*

Br. Of Cross–Appellants 15 (May 17, 2004) (emphases added).

For these reasons, the court may have determined that Meeks's allegedly offensive conduct should not be attributed to Kelly or his counsel. *See Howell v. Tex. Workers' Compen. Commn.,* 143 S.W.3d 416, 448 (Tex.App.-Austin 2004, pet. denied); *Finlay v. Olive,* 77 S.W.3d 520, 526 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *see also Spohn Hosp.,* 104 S.W.3d at 882. Accordingly, we cannot say the court abused its discretion by denying Gaines's and Southwest Guaranty's motion for sanctions. Thus, we overrule their first cross-issue.

### Gaines's And Southwest Guaranty's Counterclaims

 Gaines and Southwest Guaranty contend in their second cross-issue that the court erred by granting Kelly's no-

evidence summary judgment motion on their counterclaims for fraud, malicious prosecution, negligent misrepresentation, and conspiracy.

■ Among other challenged elements, Kelly contended in his summary judgment motion that Gaines and Southwest Guaranty could produce no evidence of damages on any of their counterclaims. Gaines and Southwest Guaranty responded that the damages they have suffered are the attorney's fees they have incurred, in Kelly's suit against them. However, attorney's fees are not generally recoverable unless provided by statute or contract. *See Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 567 (Tex.2002); *Brown v. Fullenweider*, 135 S.W.3d 340, 346 (Tex.App.-Texarkana 2004, pet. denied). Attorney's fees have been permitted in a fraud case in which the attorney's fees were incurred in prior litigation with a third party as a result of the defendant's fraudulent conduct. *See Lesikar v. Rappeport*, 33 S.W.3d 282, 306 (Tex.App.-Texarkana 2000, pet. denied).

■ In the context of a malicious prosecution claim, attorney's fees may be awarded as damages if the plaintiff first establishes that he has suffered special damages as a result of the alleged malicious prosecution. *IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 477–78 (Tex.App.-Amarillo 2001, pet. denied).

Here however, Gaines's and Southwest Guaranty's offered no evidence of special damages aside from their claim for attorney's fees incurred in this litigation. Accordingly, they produced no evidence of damages, and the court properly granted Kelly's summary judgment motion on their counterclaims. Thus, we overrule Gaines's and Southwest Guaranty's second cross-issue.

**Release Of Documents Under Seal**

Gaines and Southwest Guaranty contend in their third cross-issue that the court abused its discretion by denying their motion to release certain documents which Kelly filed with the court under seal.

This issue involves five of Gaines's and Southwest Guaranty's requests for production. By these requests, Gaines and Southwest Guaranty asked Kelly to:

4. Produce all financial and accounting records relating to the Property including the operation of any business located on or relating to the Property, including but not limited to general ledgers, payroll records, bank statements, bank records, deposit slips, canceled checks.

7. Produce all records that show any contracts, agreements, loans, transactions, or transfers of money or other property among or between you and C.W. Stocker, III.

8. Produce all records that show any contracts, agreements, loans, transactions, or transfers of money or other property among or between you and Thomas L. Bullard.

10. Produce all records reflecting or regarding any communications between you and C.W. Stocker III.

11. Produce all records reflecting or regarding any communications between you and Thomas L. Bullard.

Kelly raised several objections to these requests, contending primarily that the requests sought documents protected by the attorney-client privilege.[11] Kelly argued in his response to Gaines's and Southwest Guaranty's motion to compel production that the documents being withheld were

---

11. Kelly also objected that these requests sought documents protected by the work

product privilege and that the requests were overbroad.

privileged because they related to Stocker's and Bullard's representation of him in the suit against Gaines and Southwest Guaranty and in the prior suit involving the Cowtown Park.

Kelly filed a privilege log with the trial court identifying the documents being withheld as follows:

1. "Memo to File"; authored by C.W. Stocker, III; dated 1–19–99;

2. Letter to David Minceberg; authored by Thomas L. Bullard; dated 2–1–99;

3. Letter to David Mincebert; authored by Thomas L. Bullard; dated 2–2–99;

4. Folder containing correspondence and drafts relating to the creation of Eight Diamonds, Ltd., the entity that eventually purchased the subject property; all documents in said folder are dated within February, 1999.

Kelly presented no evidence to support the asserted privilege. He tendered these documents to the court under seal.

At a hearing on several motions, the court explained that it had examined the withheld documents and had concluded that the documents were protected by the attorney-client privilege.

■■■ A party who seeks to withhold items from discovery on the basis that the documents are privileged must make a prima facie showing that the documents are subject to the privilege asserted. *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex.2004) (orig.proceeding). Generally, this prima facie showing is made by serving a privilege log identifying the withheld documents and, if a hearing is held, by presenting evidence supporting the privilege. *See In re Maher*, 143 S.W.3d 907, 913 (Tex.App.-Fort Worth 2004, orig. proceeding); *In re Monsanto*

*Co.*, 998 S.W.2d 917, 924 (Tex.App.-Waco 1999, orig. proceeding). The evidentiary requirement may be satisfied by the documents themselves. *See DuPont*, 136 S.W.3d at 223.

The attorney-client privilege shields "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Tex.R. Evid. 503(b)(1).

Because Kelly presented no evidence to support the asserted privilege other than the documents themselves and because his privilege log provides a rather non-specific identification of the withheld documents, it is doubtful that Kelly satisfied his burden to make a prima facie showing that the withheld documents are privileged. *See Maher*, 143 S.W.3d at 914. Nevertheless, because the trial court conducted an in-camera review of the documents, we have reviewed the documents themselves to determine whether they are privileged. *See Monsanto*, 998 S.W.2d at 929.

■■■ The documents at issue do not contain or refer to any communications between Kelly and his attorneys. Rather, the documents reflect: (1) the conversations Stocker and Bullard had with Gaines and the actions they took on Kelly's behalf in an unsuccessful attempt to obtain a loan from Southwest Guaranty; (2) their unsuccessful attempt to negotiate the purchase of the property by a third party; and (3) their successful attempt to structure another financing arrangement to purchase the property via the Eight Diamonds partnership. Because these documents do not contain confidential attorney-client communications and because Kelly's attorneys were not acting in a legal capacity in these instances, the attorney-client privilege is not implicated because the communications at issue do not involve "the rendition of professional legal services." *See* Tex.R.

Evid. 503(b)(1); *see also Pondrum v. Gray,* 298 S.W. 409, 412 (Tex. Comm'n App.1927, holding approved); *In re Bivins,* 162 S.W.3d 415, 419 (Tex.App.-Waco 2005, orig. proceeding) (per curiam); *Navigant Consulting, Inc. v. Wilkinson,* 220 F.R.D. 467, 474 (N.D.Tex.2004).

Thus, the court abused its discretion by allowing Kelly to withhold these documents from disclosure. Accordingly, we sustain Gaines's and Southwest Guaranty's third cross-issue.

### Conclusion

We have determined that the trial court erred in rendering a summary judgment on Kelly's fraud claim against Gaines and Southwest Guaranty, on Kelly's claim against Gaines and Southwest Guaranty for exemplary damages, and on the issue of whether Thompson was the agent of Gaines and/or Southwest Guaranty. We have also determined that the court abused its discretion by denying Gaines's and Southwest Guaranty's motion to unseal the documents Kelly tendered to the court under seal. However, we have found no error with respect to the remainder of the issues presented by Kelly or the cross-issues presented by Gaines and Southwest Guaranty.

We affirm: (1) the take-nothing judgment rendered in favor of Thompson and Commercial Realty in its entirety; (2) that portion of the summary judgment granted on Kelly's claims against Gaines and Southwest Guaranty for breach of contract, negligence, conspiracy, and conversion; and (3) the take-nothing judgment rendered in favor of Kelly on Gaines's and Southwest Guaranty's counterclaims. We reverse: (1) that portion of the summary judgment granted on Kelly's claims against Gaines and Southwest Guaranty for fraud and exemplary damages; and (2) the court's order denying Gaines's and Southwest Guaranty's motion to unseal the documents Kelly tendered to the court under seal. We remand this cause to the trial court for further proceedings consistent with this opinion.

Chief Justice GRAY concurring and dissenting.

TOM GRAY, Chief Justice, concurring and dissenting.

### PROCEDURAL PRELUDE

In the past we have had so few opinions withdrawn that no particular problems were created if the opinions were withdrawn by an order separate from the new opinions being issued. The problem is that we have recently withdrawn and reissued an inordinate number of opinions, with and without motions for rehearing, and when on motion for rehearing, with and without requesting responses. Issuing multiple opinions in the same appeal creates confusion. This makes it possible for a person to have two opinions from this Court, both certified by the clerk as authentic, which are not the same. This does not present a substantial problem when the issuance of another opinion in the same case is rarely done. But due to the greatly increased frequency of the majority issuing multiple opinions it is time to adopt the procedure utilized by the Texas Supreme Court; to include in the second opinion, the order, and explanation if needed, withdrawing the prior opinion as part of the new opinion. *See e.g., Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 381 (Tex.2000). This information can be in the first paragraph or in a footnote, but it needs to be readily evident to the reader that this is not the only opinion issued in the case. This is a simple procedure for the convenience of anyone reading the opinions to understand and easily determine which opinion is the Court's final

opinion. This process also allows a researcher, interested in the ultimate disposition, to easily track backwards to see the development of the final opinion. Because the majority refuses to provide that information, I do so in this concurring and dissenting opinion.

## Prior History of This Appeal

The Court's opinion affirming the trial court's judgment in part and reversing and remanding the judgment in part, this Court's judgment, and Chief Justice Gray's concurring and dissenting opinion, all dated July 13, 2005, are withdrawn by a separate, unpublished order dated September 28, 2005. That order also denies Appellant's motion for rehearing, and grants Appellee's motion for rehearing in part. The Court's opinion, Chief Justice Gray's concurring and dissenting opinion and the judgment of this date are substituted for those originally issued.

With these comments regarding the history of this appeal, I now proceed to the substance of my dissenting opinion.

## THE DISSENTING OPINION

Sometimes all that is necessary to prove a privilege is the document itself. "When ... the claim for protection is based on a specific privilege, such as attorney-client or attorney work product, the documents themselves may constitute the only evidence substantiating the claim of privilege." *Weisel Enterprises, Inc. v. Curry,* 718 S.W.2d 56, 58 (Tex.1986). But when this situation presents itself, it requires some careful analysis, analysis that is lacking in the majority opinion.

In this case, in addition to the documents being provided *in camera,* Kelly provided a privilege log to assist the trial court in the evaluation of the privileges asserted by Kelly. With regard to Kelly's privilege log, I note that it also fails to identify the other recipients of items 2, 3, and 4.[1] Because other persons received the documents, and there is no affidavit or other evidence of who these persons are, I agree that Kelly has failed to establish the privileges asserted to these three items. *See E.I. DuPont de Nemours and Company,* 136 S.W.3d 218, 225–226 (Tex.2004). I also note that the information in the log on items 2 and 3 is not entirely accurate.

Item 1 in the privilege log is clearly work product. Kelly sought to protect it on this basis. It should be protected. Thus, on this issue, I must dissent to the majority ordering these privileged documents turned over to the opposing party as part of this Court's judgment. At the very least the trial court should be given the opportunity on remand to review the privileges asserted with the guidance provided by this Court's opinions. Otherwise, I concur in the Court's judgment.

---

1. It is difficult to discern or correlate the documents produced *in camera* to the privilege log. The log has four items listed. The documents produced *in camera* are divided by five numbered tabs. The first three items behind tab 1 correspond to the first three items on the log. Everything after that, including what is behind each of the four remaining tabs, may have been part of a file as described in item 4 in the log. I simply cannot tell. There are many people who appear to have received the documents whose identities are not established. There are many discrete documents of different and diverse character. The privilege log should have listed each document and the privilege asserted to it. For a discussion of the procedure to establish a privilege at the trial court and what is necessary for review of a ruling on a privilege, see the excellent discussion by Justice Vance in *In Re Monsanto,* 998 S.W.2d 917 (Tex.App.-Waco 1999, orig. proceeding).