**B.F. SAUL REAL ESTATE INVESTMENT TRUST, Appellant,**

v.

**Hugh J. McGOVERN, Appellee.**

**No. 08–83–00096–CV.**

Court of Appeals of Texas, El Paso.

Dec. 5, 1984.

Rehearing Denied Feb. 13, 1985.

Michael D. McQueen, Timothy Patton, Kemp, Smith, Duncan & Hammond, El Paso, Leslie A. Nicholson, Jr., Janice Lehrer-Stein, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for appellant.

S. Anthony Safi, W. Dean Hester, Grambling & Mounce, El Paso, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

WARD, Justice.

The Plaintiff, Hugh McGovern, by paying a fee of $240,000.00, obtained from the Defendant B.F. Saul Real Estate Investment Trust a standby loan commitment for $12,000,000.00 on the proposed construction of a hotel. When the project was abandoned, the Plaintiff sued to recover the $240,000.00 retained by the Trust on the theory that it was an unenforceable penalty rather than valid consideration for the loan commitment. Trial was to the court without a jury which entered judgment for the Plaintiff. Findings of fact and conclusions of law were requested and filed. We reverse and render.

The case stems from the Plaintiff's attempt to develop a first class hotel in downtown El Paso. A lender not involved in this controversy, First of Denver Real Estate Investment Trust, agreed to provide the Plaintiff with a $12,000,000.00 construction loan if the Plaintiff could find a satisfactory permanent loan commitment. The Plaintiff made an unsuccessful attempt to find such a lender. Instead, on March 29, 1974, he entered into the standby commitment with the Defendant. From a practical point, no loan would have ever been made under this $12,000,000.00 commitment. Rather, the standby commitment would have allowed construction to begin, and provided the Plaintiff more time to find an acceptable permanent loan commitment with which to pay the construction loan. It was a hedge. The Plaintiff would have wanted the traditional permanent loan since the standby loan, if made, would have required interest at the highest limit and payment within a short period of time. A traditional permanent loan would allow repayment over twenty-five to thirty years and at a more reasonable rate of interest. Though the standby commitment was made, First of Denver declined to make the construction loan for legitimate reasons which had been provided for in its own agreement. No other lender could then be found to make the construction loan.

The standby loan commitment in question as made on March 29, 1974, stated that Mr. McGovern could obtain in April, 1978, a standby loan of $12,000,000.00 provided the following conditions had been met:

1. The borrower had paid $240,000.00 to the Trust for the first two years of the commitment period.

2. Commencement of construction of the proposed improvements had begun within 180 days of the date of the commitment.

3. The borrower had paid an additional $120,000.00 for the third year of the commitment period not less than thirty days prior to the expiration of the first two years.

4. The borrower had paid an additional $120,000.00 for the fourth year of the commitment period not less than thirty days prior to expiration of the third year.

5. The borrower had given at least one hundred twenty (120) days' advance written notice of its desire to fund the standby loan during the month of April, 1978.

6. The borrower had paid as additional interest the sum of $360,000.00 not later than the first advance of funds under the standby loan.

The critical provision in the contract regarding the commencement of construction was paragraph 24(D) and was as follows:

(D) Construction of the proposed improvements shall be within 180 days after the date of the commitment or the commitment fee will be forfeited as liquidated damages to the lender and the commitment shall become void.

Mr. McGovern was unable to commence construction within the 180-day period prescribed by paragraph 24(D). By July, 1975, Mr. McGovern had abandoned his efforts to find any construction financing and at that time claimed that his inability to arrange for such financing was because the Saul Trust commitment was worthless and he demanded that the commitment be rescinded and his fee returned. The Trust refused to return the $240,000.00 commitment fee which had been paid and this litigation resulted.

The Plaintiff brought suit alleging fraud, mutual mistake, breach of warranty and unenforceable penalty. At the first trial, the jury returned a verdict rejecting each of the Plaintiff's contentions. Instead of granting judgment on the verdict, the trial judge granted a new trial. Mr. McGovern then, by stipulation, waived all of his claims except for the issue of unenforceable penalty. The parties waived a jury and proceeded to trial before the court on the one theory and with an additional stipulation that all the evidence of the first trial could be considered as part of the record of the second trial. Judgment was then entered for the Plaintiff, the court finding as a matter of law that the $240,000.00 forfeiture was an unenforceable penalty.

■ For all practical purposes, the facts are not in dispute since the Defendant makes only one attack on the findings of fact filed by the trial court. As previously noted, Paragraph 24(D) of the contract provided that unless construction began within 180 days of the commitment, the commitment would be void and the $240,000.00 would be forfeited as liquidated damages. The trial court found that construction did not begin within the 180 days and the Defendant's fifth point is a factual insufficiency attack on this finding. In the second trial, Mr. McGovern offered no evidence in support of his claim but rested immediately after his attorney's opening statement. In the first trial, Mr. McGovern took the position and offered evidence to the effect that construction did in fact begin. What the Defendant overlooks is that in the first trial, the Defendant undertook to prove and did provide evidence that construction did not commence within 180 days of the commitment. As an example, Mr. Cronin, an expert witness for the Defendant, testified at the first trial that from his investigation, construction had not started on time. Having reviewed all of the evidence on this matter together with the inferences arising therefrom, the fifth point is overruled.

Points of Error Nos. One through Four advance essentially the same argument. The Defendant contends that the $240,-000.00 was valid consideration for holding

open the loan commitment, not a penalty as the trial court found. That argument requires examination of the consideration provisions of the contract. When the parties agreed to the loan commitment on March 29, 1974, the Plaintiff paid the Defendant $240,000.00 to hold the commitment open until April, 1976. The standby loan could only be made, however, in April, 1978. To keep the commitment alive from April, 1976, to April, 1978, an additional payment of $120,000.00 was required for each of the two twelve-month periods. Further fees and notice were required if the Plaintiff ever actually called on the Defendant to make the loan.

The Plaintiff's argument that Special Provision 24(D) of the standby commitment provided for an unenforceable penalty rather than liquidated damages is based on the premise that this case is controlled by *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484 (1952). There, the Supreme Court held that in order to enforce a liquidated damages clause, the court must find: (1) that the harm caused by the breach is incapable or difficult of estimation and (2) that the amount of liquidated damages called for is a reasonable forecast of just compensation for the breach.

In its findings, the trial court found: (1) as of March 29, 1974, the harm, if any, that would be caused to the Saul Trust by Mr. McGovern's failure to begin construction of the proposed improvements on or before September 25, 1974, was not incapable or difficult of accurate estimation and (2) that the forfeiture of the $240,000.00 to the Saul Trust in the event Mr. McGovern did not begin construction of the proposed improvements on or before September 25, 1977, was not, as of March 29, 1974, a reasonable forecast of just compensation for the harm, if any, that would be caused to the Saul Trust by said failure to begin construction of the proposed improvements.

Thus, the Plaintiff concludes that since the requirements necessary to establish liquidated damages for a breach of contract were missing, the trial court was correct in holding that the $240,000.00 forfeiture was an unenforceable penalty.

The trouble with the Plaintiff's reasoning is that there was no breach of contract ever commited by Mr. McGovern. The whole subject of penalty versus liquidated damages only arises when the parties to a contract have attempted to provide for a remedial right upon breach of a contract. *See:* Restatement of Contracts Second, sec. 339 (1981); Murray on Contracts, sec. 234 (Second Rev.Ed.1974); 5 Corbin on Contracts, sec. 1058 (1964); C. Mueller, Functional Approach in Determining the Validity of a Liquidated-Damages Clause, 30 Texas L.Rev. 752 (1952). To warrant a recovery of liquidated damages, there must have been a breach of the contract by a defendant. 22 Am.Jur.2d Damages, sec. 252 (1965). On the other hand, if this was an option contract held by Mr. McGovern, such a contract does not come within the equitable rule against forfeiture inasmuch as failure to comply strictly with the conditions of the option deprives no party of any right and abrogates no contract. 17 Am. Jur.2d Contracts, sec. 60 (1964).

It is clear that from reading the entire loan commitment, the requirement that construction begin within 180 days is one of several conditions that the Plaintiff had to satisfy in order to exercise the option. As with any option, the Plaintiff was not obligated to perform any of the conditions made. Accordingly, the Saul Trust had no legal right to force the Plaintiff to start construction within 180 days, to build the hotel, to pay the additional amounts or to borrow the twelve million ($12,000,-000.00) from the Saul Trust. Nor could the Saul Trust have collected damages for the failure of the Plaintiff to do any of those things. Paragraph 24(D) cannot be construed as a penalty clause, but only as a condition of the commitment.

There are two types of loan commitments: (1) a bilateral agreement under which the lender is obligated to make the loan if certain conditions are satisfied and the borrower is obligated to take the loan. Such a loan commitment was before the court in the case upon which the Plaintiff relies. *Tri-Cities Construction, Inc. v.*

*American National Insurance Company,* 523 S.W.2d 426 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ), *appeal after remand,* 551 S.W.2d 106 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). *See:* Annotation, 93 A.L.R.3d 1156 (1979). And (2) a unilateral agreement by a lender to make the loan if certain conditions are satisfied where the borrower has the right to take or not take the loan. The lender cannot force the borrower to do anything. *See: Lowe v. Massachusetts Mutual Life Ins. Co.,* 54 Cal.App.3d 718, 127 Cal.Rptr. 23, 25 (Cal.App. [1st Dist.] 1976). This is the type before us.

The $240,000.00 was a commitment fee paid for the lender's agreement to make the loan. *See: Stedman v. Georgetown Savings and Loan Association,* 595 S.W.2d 486 (Tex.1979). The language used in Paragraph 24(D) was the parties' inartful way of saying the fee was nonrefundable. *See: Walker v. First Pennsylvania Bank,* 518 F.Supp. 347 at 354 (E.D.Pa. 1981). Points of Error Nos. One through Four are sustained.

We do not reach Points of Error Nos. Six through Eight where the Defendant contests the exclusion of certain tendered evidence.

The judgment of the trial court is reversed and judgment is hereby rendered that the Plaintiff take nothing.