**VALDINA FARMS, INC., Appellant (Cross-Appellee),**

v.

**BROWN, BEASLEY & ASSOCIATES, INC., and the Travelers Insurance Company, Appellees (Cross-Appellants).**

No. 04–85–00544–CV.

Court of Appeals of Texas, San Antonio.

June 30, 1987.

Thomas H. Crofts, Jr., Groce, Locke & Hebdon, San Antonio, for appellant.

Larry R. Patton, San Antonio, for appellees.

\* Associate Justice Pete Tijerina not participating.

Before ESQUIVEL, TIJERINA\* and DIAL, JJ.

## OPINION

DIAL, Justice.

Valdina Farms, Inc., brought suit to enjoin Brown, Beasley & Associates, Inc. (Brown, Beasley) and The Travelers Insurance Company (Travelers) from presenting a letter of credit for payment. Valdina Farms further alleged Travelers fraudulently forced Valdina Farms into a forfeiture of earnest money. Travelers and Brown, Beasley counterclaimed to recover under the letter of credit and for attorney's fees. The trial court denied Valdina Farms' requested relief, dissolved the temporary restraining order, and entered judgment that Travelers and Brown, Beasley recover $227,330.00 earnest money, but denied them recovery of attorney's fees.

On May 3, 1984, Valdina Farms obtained a written loan commitment from Travelers through Brown, Beasley (Travelers' loan correspondent) in the amount of $12,000,-000.00. The loan commitment was scheduled to expire August 1, 1984. Valdina Farms agreed to provide $240,000.00 (two percent of the loan commitment) as earnest money, which would be refunded to Valdina Farms on the closing of the loan or on the inability of Valdina Farms to sell certain of its assets. If Valdina Farms otherwise failed or refused to close the loan, Valdina Farms was to forfeit the $240,-000.00. Valdina Farms issued an irrevocable commercial letter of credit payable to Brown, Beasley in the amount of $240,-000.00.

The loan commitment was conditioned on Valdina Farms' selling two real estate assets in order to reduce its overall debt and on Valdina Farms' delivery to Travelers of a first lien on a 17,146.004 acre ranch located in Uvalde and Medina Counties. Valdina Farms was required to sell 454 acres of its land in Bexar County for $35,600,000.00 (through its affiliate, Retama Development

Corporation) and certain oil, gas, and mineral interests for $65,000,000.00 (through Retamco, Inc.). The loan commitment provided:

This Commitment is subject to these sales being consumated [sic] and the overall liabilities of Gose properties being greatly reduced. Therefore, if at the time of closing of this loan these transactions have not been consumated [sic] or progressed to a point that is satisfactory to The Travelers Insurance Company, the Commitment will be null and void. Should The Travelers Insurance Company decline to close the loan because of these requirements not being satisfactory to them, the Earnest Money Deposit will be refunded less actual expenses.

■ Valdina Farms was unable to secure a first lien on the ranch property for Travelers. Included in the land to be attached were 890 "excess acres."[1] Valdina Farms was legally unable to grant a lien on the excess acres. Furthermore, Valdina Farms had no clear title to the remaining acres of the ranch, title still being vested in the previous owners.

On June 25, 1984, Travelers informed Valdina Farms that before it would close the loan, it would require Valdina Farms' parent company, Cibolo Properties, Inc., and Cibolo's chief executive officer, Steve Gose, to be included as makers of the loan. Further, Travelers reduced the loan commitment from $12,000,000.00 to $11,366,-500.00 to adjust for the excess acreage problem. Travelers was willing to accept a lien on all but the 890 acres of the ranch. The day before the closing date, July 31, 1984, Valdina Farms wrote to Travelers stating that the new requirements were unacceptable, that other conditions of the loan commitment had not been met, and that Valdina Farms would therefore not close the loan.

Travelers notified Valdina Farms by letter dated August 1, 1984, that it waived the joinder of Cibolo and that the sales of the other properties had sufficiently progressed and that Travelers would close the loan.

Valdina Farms refused to close the loan, claiming it was impossible for it to provide the first lien and because Travelers did not waive the new conditions until it knew Valdina Farms could not consummate the loan. Travelers presented the letter of credit for payment, claiming Valdina Farms defaulted on the loan commitment. Valdina Farms claims it has not forfeited the $240,-000.00 earnest money and is liable to Travelers pursuant to the loan commitment to pay only the legal expenses incurred by Brown, Beasley in connection with the loan commitment.

The trial court entered a temporary injunction prohibiting Travelers and Brown, Beasley from presenting the letter of credit for payment. After trial on the merits, the trial court entered a directed verdict in which it dissolved the temporary restraining order, denied Valdina Farms' request for a permanent injunction, and entered judgment for Travelers and Brown, Beasley to recover $227,330.00[2] on the letter of credit. Valdina Farms, as well as Travelers and Brown, Beasley, appeal the judgment of the trial court.

Appellant, Valdina Farms, complains the trial court erred in removing the case from the jury because there was evidence which presented a fact question on the following issues: That Travelers committed an anticipatory breach of the loan commitment by unilaterally reducing the amount of the loan from $12,000,000.00 to $11,366,500.00 and by requiring Cibolo Properties, Inc. to

---

**1.** The term "excess acreage" applies when the actual number of acres in a patented or titled tract of land exceeds the acreage called for in the original survey upon which the patent or grant was based. Under the law the excess acres still belong to the State because the State has not been compensated for them, and no patent has been issued from the State applicable to the particular land. Before the owner of a tract of land containing excess acres can claim ownership and give a lien against them, he must

file corrected field notes with the land commissioner and pay the appraised value of the land. He will then receive a deed of acquittance from the State. *See* TEX.NAT.RES.CODE ANN. § 51.246 (Vernon 1978).

**2.** The $227,330.00 reflects a reduction in the earnest money in proportion to the reduction of the loan commitment by Travelers from $12,-000,000.00 to $11,366,500.00.

sign the note; and that Travelers engaged in fraudulent conduct by waiting until it knew Valdina Farms was unable to provide a first lien before waiving additional requirements and by presenting the letter of credit for collection on the basis that Valdina Farms had defaulted under the terms of the loan commitment.

A party is entitled to a directed verdict when reasonable minds can draw only one conclusion from the evidence, otherwise the issue must go to the jury. We must determine whether there is any evidence of probative force to raise a fact issue on the material question presented. In making this determination we must consider all of the evidence in the light most favorable to the party against whom the verdict was instructed and discard all contrary evidence and inferences. *Jones v. Tarrant Utility Co.*, 638 S.W.2d 862, 865 (Tex.1982); *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978).

Charles Hatch, Manager of Real Estate Affairs for Valdina Farms and its affiliates, testified that in 1980, Steve Gose, Jr., acquired the Valdina Farms land from Governor Dolph Briscoe and R. J. Nunley and shortly thereafter transferred it to Retamco, Inc. In 1983 it was transferred to another corporation by the name of Valdina Farms, Inc. Later that same year, the property was reconveyed to Governor Briscoe and R.J. Nunley due to Valdina Farms' inability to make the payment due under the contract. Valdina Farms received a contract for deed on the property from Governor Briscoe after this final reconveyance. Valdina Farms was unable to keep up the payments under the contract for deed. In an attempt to keep the ranch Valdina Farms sought the multimillion dollar loan through Brown, Beasley.

Robert E. Wehmeyer, Jr., attorney for Brown, Beasley and Travelers, testified that Valdina Farms represented they held the title to the property to be used as security for the loan. However, title for that realty rested in Governor Dolph Briscoe and the estate of R.J. Nunley and Doro-

thy Nunley, deceased, at the time of the loan application. The loan application reflected Valdina Farms wanted the $12,000,-000.00 in order to refinance and pay off certain indebtednesses against the property.

The evidence shows that Valdina Farms signed the loan commitment papers on May 3, 1984. The loan commitment required only Steve Gose to sign in his individual capacity. The commitment made no mention of the necessity of the co-signature of Cibolo Properties, Inc., the parent company of Valdina Farms. In June 1984 Brown, Beasley sent a letter to Valdina Farms informing them that Cibolo must also sign the note in order to close the loan. Edwin Brown, President of Brown, Beasley, told Charles Hatch that Cibolo's signature was necessary. No one from Valdina Farms objected or complained to Travelers or Brown, Beasley about this requirement until July 31, the day before the loan was to close. Further, during this time, Valdina Farms continued to negotiate with Governor Briscoe concerning the ranchlands. Edwin Brown testified that Hatch agreed to the addition of Cibolo as a signatory. On July 31, Valdina Farms' attorney wrote to Travelers and stated that Valdina Farms would not close the loan because they refused to accept the additional requirement. The July 31 letter was hand delivered to Travelers. The following day, August 1, Travelers' attorney wrote back to Valdina Farms and expressly waived the additional requirement that Cibolo sign the note, expressed their satisfaction with the progress of sales of Valdina Farms' assets, and affirmed that Travelers would close the loan. The letter also stated Travelers' intention to hold Valdina Farms to the closing date of August 1 or forfeit the earnest money.[3]

John Sorge, Regional Vice-President in the Real Estate Investment Department for Agricultural Investments at Travelers, stated that the omission of the requirement of Cibolo's co-signature from the loan commitment was an error. Wehmeyer testified that Travelers waived the requirement that

---

**3.** There is testimony the parties discussed the possibility of extending the loan closing date, but Valdina Farms was unwilling to pay an additional sum to hold the loan.

Cibolo sign the note because when Valdina Farms objected the day before closing Travelers reviewed the loan commitment and discovered it did not require Cibolo's signature.

Wehmeyer testified that the loan amount was reduced from $12,000,000.00 to $11,366,500.00 because the land to be used as security for the loan contained "excess acres."

Valdina Farms and the Gose Group (owner of Valdina Farms and Cibolo Properties, Inc.) discussed the excess acreage problem with Wehmeyer. An engineer employee from Valdina Farms, Barry Allison, participated in the research to determine the amount of excess acreage. All parties agreed the land included 890 excess acres. Wehmeyer further testified that Valdina Farms wanted to close the loan and did not want to take time to obtain an acquittal deed. Therefore they agreed to exclude from the deed of trust the 890 excess acres. Travelers reduced the loan in proportion to the reduction in the number of acres to be included in the deed of trust as security for the loan. Wehmeyer testified Valdina Farms never expressed any dissatisfaction concerning the loan reduction. A letter was sent from Travelers' attorney to the title company on June 26, 1984, with a copy to Valdina Farms' attorney stating, "The Policy shall be issued in the amount of $11,366,500.00. (Your original Commitment was issued in the amount of $12,000,000.00, however the amount of this loan has been reduced due to the 'excess acreages' included within the loan security)." There is also set out the apparent acreage patented for such survey, which land would be excepted from the liens.

Valdina Farms' agent, Barry Allison, was actively involved in obtaining information about the excess acreage and maintaining its financing through Travelers. Further, Valdina Farms had knowledge that Travelers was reducing the loan amount, and Valdina Farms made no objection until the day prior to the closing date. The evidence establishes that the loan reduction was more than a last minute decision made after the closing date.

Waiver is the intentional or voluntary relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right. *Estes v. Wilson,* 682 S.W.2d 711, 714 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); *Burton v. National Bank of Commerce of Dallas,* 679 S.W.2d 115, 117 (Tex.App.—Dallas 1984, no writ). We hold as a matter of law that Valdina Farms waived its complaint about the reduced loan by remaining silent until the day before the loan was scheduled to close. The trial court did not abuse its discretion by removing this issue from the jury's consideration.

Appellant urges that by demanding Cibolo to sign the note when the loan commitment agreement did not require its joinder was an anticipatory breach by Travelers.

An anticipatory breach occurs when the defendant absolutely repudiates the obligation, without just excuse, and the plaintiff was damaged by the repudiation. *Taylor Publishing Co. v. Systems Marketing Inc.,* 686 S.W.2d 213, 217 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). However, the defendant may retract his repudiation by notifying the plaintiff that he intends to perform the contract. He may retract his repudiation until such time as the plaintiff has materially changed his position in reliance on the repudiation in such a way as to make performance more burdensome or until the plaintiff brings an action as on a breach of their contract. *Helsley v. Anderson,* 519 S.W.2d 130, 133 (Tex.Civ.App.—Dallas 1975, no writ); *Continental Casualty Co. v. Boerger,* 389 S.W.2d 566, 569–70 (Tex.Civ.App.—Waco 1965, writ dism'd); *Kingsbery v. Phillips Petroleum Co.,* 315 S.W.2d 561, 568 (Tex.Civ.App.—Austin 1958, writ ref'd n.r.e.).

On June 25, 1984, Travelers notified Valdina Farms that the joinder of Cibolo on the note would be required to close the loan. Further, the letter of June 26, 1984, from Travelers' attorney to Brown, Beasley was also sent to Valdina Farms' attorney. The letter stated that Cibolo was to join in the execution of the note evidencing the loan. The president of Brown,

Beasley personally notified Valdina Farms' manager that Cibolo's signature was necessary. Edwin Brown testified that Charles Hatch of Valdina Farms agreed to the addition of Cibolo. Valdina Farms continued to treat the contract as in full force. Because Valdina Farms' agent, Charles Hatch, agreed to the addition of Cibolo to the note, we hold that there was no anticipatory breach as a matter of law. Further, even if there were a repudiation, Travelers timely retracted it before Valdina Farms brought suit, and Valdina Farms has failed to present evidence that it materially changed its position in reliance on the repudiation in such a way as to make performance more burdensome. The trial court did not err in entering an instructed verdict on this issue.

 Appellant further complains Travelers maliciously waived the additional requirements in order to induce Valdina Farms to breach the contract. There is no evidence of any malicious intent on the part of Travelers. Valdina Farms was unable to provide a first lien for Travelers' benefit. Any waiver of requirements was strictly up to Travelers. It was under no duty to waive any or all of the loan commitment requirements. There is no evidence Travelers mislead Valdina Farms into believing the requirement of a first lien would be waived. Further, Travelers did not waive the requirement concerning the sales of certain properties. The loan commitment provided that the sales were to be made by or progressed to a point satisfactory to Travelers *by closing*. Travelers stated on the closing date that the sale of the oil, gas, and mineral interests had progressed to a point which was satisfactory to Travelers. Valdina Farms had reduced its debts by approximately $70,000,000.00, more than fifty percent.

Appellant also asserts Travelers acted fraudulently in presenting the letter of credit for collection because Travelers informed the bank that Valdina Farms had defaulted under the terms of the loan commitment. Valdina Farms had defaulted and does not dispute that it was unable to present a first lien. Thus, Travelers was justified, under the terms of the loan commitment, in presenting the letter of credit for collection.

Appellant's last point of error alleges the trial court erred in failing to find the earnest money provision of two percent was excessive as liquidated damages and was an unenforceable penalty. We find the circumstances in this case fall directly under the court's ruling in *B.F. Saul Real Estate Investment Trust v. McGovern*, 683 S.W.2d 531, 534–35 (Tex.App.—El Paso 1984, no writ). In that case, B.F. Saul and McGovern entered into a standby loan commitment. McGovern failed to meet the conditions of the loan commitment and sued to recover his two percent commitment fee. The court of appeals found the fee to be a condition of the commitment paid for the lender's agreement to make the loan rather than a penalty or liquidated damages arising out of a breach of the contract. The court stated:

> It is clear that from reading the entire loan commitment, the requirement that construction begin within 180 days is one of several conditions that the Plaintiff had to satisfy in order to exercise the option. As with any option, the Plaintiff was not obligated to perform any of the conditions made. Accordingly, the Saul Trust had no legal right to force the Plaintiff to start construction within 180 days, to build the hotel, to pay the additional amounts or to borrow the twelve million ($12,000,000.00) from the Saul Trust. Nor could the Saul Trust have collected damages for the failure of the Plaintiff to do any of those things. Paragraph 24(D) cannot be construed as a penalty clause, but only as a condition of the commitment.

> There are two types of loan commitments: (1) a bilateral agreement under which the lender is obligated to make the loan if certain conditions are satisfied and the borrower is obligated to take the loan. . . . And (2) a unilateral agreement by a lender to make the loan if certain conditions are satisfied where the borrower has the right to take or not take the loan. The lender cannot force the

borrower to do anything. (Citations omitted.)

*Id.* at 534.

 This commitment fee is a unilateral agreement in which the lender agrees to make the loan if its conditions are met. Valdina Farms was not required to proceed with the loan if it chose not to. The commitment fee was paid for Travelers' agreement to make the loan. The fee is not an unenforceable penalty or excessive liquidated damages.

Appellees bring two cross-points of error concerning attorney's fees and the reduction in the commitment fee they recovered.

The loan commitment required Valdina Farms to provide earnest money or a commitment fee in the amount of two percent of the loan commitment. The original loan was to be in the amount of $12,000,000.00, thus making the commitment fee equal $240,000.00. However, the parties discovered the land to be used as security for the loan contained excess acreage and agreed to a reduction in the loan proportionate to the reduction in the number of acres to be used as security. The loan was therefore reduced to $11,366,500.00. Pursuant to the terms of the loan commitment, Valdina Farms was to provide a commitment fee of two percent of the loan, or $227,330.00.

We find no abuse of discretion on the part of the trial court in its interpretation of the loan commitment in connection with the parties' subsequent oral modification.

Travelers and Brown, Beasley complain the trial court erred in not awarding attorney's fees. Appellees argue that even though appellant initiated the suit by seeking to enjoin Travelers from collecting on Valdina Farms' letter of credit, Travelers recovered its commitment fee under a contract cause of action and thus is entitled to recover reasonable attorney's fees. Travelers collected on the letter of credit prior to the signing of the final judgment.

The trial court dissolved the temporary injunction prohibiting Travelers or Brown, Beasley from presenting the letter for collection on December 19, 1984. On the same day the court orally ruled that appellant take nothing and that appellees are entitled to $227,330.00 of the original commitment fee plus interest. The court deferred signing the judgment until it held a hearing on the issue of appellees' entitlement to attorney's fees. On August 21, 1985, the trial court signed the written judgment and denied appellees recovery of attorney's fees. Since appellees collected on the $240,000.00 letter of credit after the temporary injunction was dissolved, and the court reduced the amount of the commitment fee due to the excess acreage problem, the trial court ordered Travelers and Brown, Beasley to remit $6,415.07 to Valdina Farms.

"A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: ... (8) an oral or written contract" TEX.CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986). In order to recover attorney's fees, the claimant must be represented by an attorney and must present the claim to the opponent or his authorized agent. Further, the claim must have gone unpaid for thirty days after presentment. TEX.CIV. PRAC. & REM.CODE ANN. § 38.002 (Vernon 1986). A rebuttable presumption arises that usual and customary attorney's fees in cases described by section 38.001, which include contract cases, are reasonable. TEX.CIV.PRAC. & REM.CODE ANN. § 38.003 (Vernon 1986).

 Travelers and Brown, Beasley alleged a counterclaim based on contract and recovered under their counterclaim. Because the facts necessary to defeat the injunction are the same as those needed to collect on a letter of credit based on the loan commitment, attorney's fees are recoverable, and the fees incurred in defending against the injunction need not be segregated from the fees incurred for recovering under their counterclaim. *Houston Lighting & Power Co. v. Russo Properties, Inc.,* 710 S.W.2d 711, 714 (Tex.App.—Houston [1st Dist.] 1986, no writ); *Crow v. Central Soya Co.,* 651 S.W.2d 392, 396 (Tex.App.—Fort Worth 1983, writ ref'd n.r. e.); *Schepps Grocery Co. v. Burroughs*

*Corp.,* 635 S.W.2d 606, 611 (Tex.App.— Houston [14th Dist.] 1982, no writ).

Travelers' counterclaim is based on recovering the earnest money as provided by contract. Travelers recovered on a contract cause of action and is entitled to reasonable attorney's fees. The trial court erred in failing to award recovery to Travelers and Brown, Beasley. Because we are not factfinders, we must remand this issue to the trial court for a determination of reasonable attorney's fees.

The judgment of the trial court is affirmed with the exception of the denial of Travelers' and Brown, Beasley's attorney's fees. That remaining portion of the judgment is reversed and the cause remanded to the trial court for appropriate action awarding attorney's fees to appellees' attorney.