747 N.W.2d 383 (2008)
275 Neb. 425
BERENS AND TATE, P.C., appellee,
v.
IRON MOUNTAIN INFORMATION MANAGEMENT, INC., appellant.
No. S-07-193.
Supreme Court of Nebraska.
April 11, 2008.
*385 David J. Lanphier, of Broom, Johnson, Clarkson & Lanphier, Omaha, for appellant.
Nora M. Kane, of Stinson, Morrison & Hecker, L.L.P., Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.
Berens and Tate, P.C., has stored its business records and other files with Iron Mountain Information Management, Inc. (Iron Mountain), since 1997. Pursuant to the agreement between these parties, in order for Berens and Tate to permanently remove its records from Iron Mountain, Berens and Tate must pay a "Permanent Withdrawal" fee in addition to a retrieval fee. The question presented in this case is whether the "Permanent Withdrawal" fee is an unenforceable penalty provision. We conclude that it is not and reverse the judgment of the district court.

FACTS
In 1989, Berens and Tate, a Nebraska law firm, entered into a "Storage and Service Agreement" with Bekins Records Management Center, wherein Bekins Records Management Center agreed to provide storage services for Berens and Tate's files and other business records. In 1997, Iron Mountain purchased Bekins Records Management Center and continued providing storage services to Berens and Tate.
In 1998, Berens-Tate Consulting Group, Inc., entered into a "Records Management and Service Agreement" with Iron Mountain. The parties agree that whatever the relationship between Berens-Tate Consulting Group and Berens and Tate law firm, the law firm is bound to the contract, and for purposes of this appeal, we will refer simply to "Berens and Tate."
The contract at issue in this case is automatically renewed each year, unless written notice of nonrenewal is given within 30 days of the contract's expiration date. Each year, Iron Mountain has sent Berens and Tate a renewal notice entitled "Schedule A." Each "Schedule A" sets forth, among other things, the effective date of the contract and a schedule of fees to be charged for Iron Mountain's services for that year.
As relevant to this appeal, "Schedule A" includes fees for "Retrievals or Refiles," "Delivery," and "Permanent Withdrawal." The "Schedule A" provides that the fee for "Retrievals or Refiles" is for "[t]he temporary retrieval of deposits from, or return to, storage." A customer is charged a retrieval fee when a customer asks to have a record temporarily removed and is charged a refile fee when the record is returned. The "Permanent Withdrawal" fee is for "[t]he preparation, documentation, and permanent withdrawal of deposits." Pursuant to "Schedule A," when a customer permanently removes a record, the customer is charged the "Permanent *386 Withdrawal" fee and is also charged the fee for "retrieval."
"Schedule A" also contains a section entitled "Storage pricing," which addresses a minimum monthly storage fee that must be paid by each customer. If a customer permanently removes its records prior to the expiration date of its contract with Iron Mountain, the customer is still obligated to pay the minimum monthly storage fee for the months remaining on the contract.
On August 12, 2004, Berens and Tate notified Iron Mountain that it wanted to remove all of its records from Iron Mountain and transfer those records to another storage company. Iron Mountain informed Berens and Tate that pursuant to the operative "Schedule A," Berens and Tate would be obligated to pay the "Permanent Withdrawal" fee of $3.70 per cubic foot and a retrieval fee of $2.10 per cubic foot. According to Berens and Tate, the total charge to permanently remove its records would have been approximately $10,000.
Berens and Tate filed a complaint seeking a declaratory judgment that "the permanent removal fee provision in Iron Mountain's contract [is] null and void and illegal in the State of Nebraska." In its complaint, Berens and Tate alleged that the permanent removal fee is "an unlawful and unenforceable liquidated damages provision" that it "constitutes a penalty," and that it is "a charge separate and beyond the fee that is assessed for actual retrieval of the files, and is essentially a fiction ... with no service, benefit or other consideration performed for or bestowed upon the owner of the records."
At the time of trial, Berens and Tate's files were still being stored by Iron Mountain. The record further reflects that other than payment of the "Permanent Withdrawal" fee, Berens and Tate has complied with, and is current on, all of the other fees required under "Schedule A."
In its case in chief, Berens and Tate called David Harding, general manager for Iron Mountain, to testify. Harding was questioned at length regarding the fees charged by Iron Mountainin particular, Iron Mountain's justification for charging a permanent withdrawal fee in addition to a retrieval fee when records are permanently removed. Harding testified, summarized, that the permanent withdrawal fee is necessary in order to compensate for the additional labor and services that are provided when large amounts of records are permanently removed.
Harding further testified that the permanent withdrawal fee is needed because when records are permanently removed, the shelf space that was "reserved" for that customer's records remains empty, resulting in a loss of revenue for the remainder of the contract. However, Harding later acknowledged that a customer is obligated to pay the monthly storage fee for the entire contract, regardless of whether the customer's records have been permanently removed prior to the end of the contractual term.
The district court, citing Growney v. C M H Real Estate Co.,[1] determined that the "Permanent Withdrawal" fee cannot be considered an enforceable liquidated damages clause. The court explained that "[playing twice for the same service is not a reasonable estimate of damages and is not reasonably proportionate to the damages which have actually been caused by the breach...." The court found that the permanent removal fee provision was unenforceable and entered judgment accordingly. Iron Mountain appealed.

*387 ASSIGNMENTS OF ERROR
Iron Mountain assigns, restated, consolidated, and renumbered, that the district court erred in (1) finding that the "Permanent Withdrawal" fee in the contract was unenforceable and (2) imposing upon Iron Mountain an incorrect burden of proof.

STANDARD OF REVIEW
[1] When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question.[2]
[2] Generally, the question whether a sum mentioned in a contract is to be considered as liquidated damages or as a penalty is a question of law, dependent on the construction of the contract by the court.[3]

ANALYSIS
The question presented in this appeal is whether the "Permanent Withdrawal" fee in "Schedule A" of the contract between Iron Mountain and Berens and Tate is an enforceable contractual provision. Iron Mountain contends that it is, while Berens and Tate claims it is not. Specifically, Berens and Tate argues that the "Permanent Withdrawal" fee is not a reasonable liquidated damages clause, but is rather an unenforceable penalty provision. Accordingly, Berens and Tate claims that the principles governing the distinction between liquidated damages and penalty provisions govern the disposition of this case.
[3-5] In addressing liquidated damages and penalty provisions, we have explained that "`parties to a contract may override the application of the judicial remedy for breach of a contract by stipulating, in advance, to the sum to be paid in the event of a breach.'"[4] We have held that
"`[t]he question of whether a stipulated sum is for a penalty or for liquidated damages is answered by the application of one or more aspects of the following rule: a stipulated sum is for liquidated damages only (1) where the damages which the parties might reasonably anticipate are difficult to ascertain because of their indefiniteness or uncertainty and (2) where the amount stipulated is either a reasonable estimate of the damages which would probably be caused by a breach or is reasonably proportionate to the damages which have actually been caused by the breach.'"[5]
We have "`consistently upheld the right of contracting parties to privately bargain for the amount of damages to be paid in the event of a breach of contract, provided the stipulated sum is reasonable in light of the circumstances.'"[6]
[6-8] Given these principles, it is clear that the distinction between liquidated damages and penalty provisions applies only when the contractual provision at issue *388 is an attempt by the parties to provide for the measure of recovery in the event of nonperformance or breach of the contract. Stated differently, the focus on liquidated damages versus penalty only arises when the contractual provision seeks to determine, in advance, the measure of damages resulting from a parties' breach or nonperformance of the contract. It therefore follows that a provision for payment of a specified sum as compensation for services already contemplated by the contract, as opposed to compensation for injury resulting from a breach of the contract, is neither a liquidated damages clause nor a penalty provision.
[9] It is well established that a contractual provision that requires payment based on something other than a breach of the contract is neither a liquidated damages clause nor a penalty provision.[7] For example, the U.S. Supreme Court in Kirby v. United States[8] was called upon to determine, among other things, whether a particular provision in a lease agreement constituted a penalty. The Court concluded that it was "neither a penalty nor liquidated damages," because the fee at issue "was not to be paid for any breach of contract, but as compensation"[9] under the contract. Likewise, the Texas Court of Appeals, in B.F. Saul Real Estate Inv. Trust v. McGovern,[10] explained that "[t]he whole subject of penalty versus liquidated damages only arises when the parties to a contract have attempted to provide for a remedial right upon breach of a contract."
[10] Applying these principles to the present case, it is clear that the "Permanent Withdrawal" provision in the contract between Iron Mountain and Berens and Tate is neither a liquidated damages clause nor a penalty provision. The "Permanent Withdrawal" fee is not a prediction of damages for a possible future breach of the contract by Berens and Tate. Rather, it was the parties' agreed-upon compensation for services to be performedspecifically, the permanent removal of records.
According to the contract, permanently removing records does not, in and of itself, result in a breach. Indeed, under the terms of the contract, Berens and Tate is free to permanently remove one, or all, of its records, without being in breach of the contract, so long as Berens and Tate pays the contracted fee. And the contract expressly provides that in order for the permanent removal of the records to be performed by Iron Mountain, payment for such services must be made. In other words, the "Permanent Withdrawal" fee is charged for services to be rendered by Iron Mountain and not for damages resulting from any breach of contract by Berens and Tate. Therefore, the "Permanent Withdrawal" fee is neither a liquidated damages clause nor a penalty provision. The question whether the fee is a reasonable estimate of damages caused by a breach is irrelevant, and the district court erred in engaging in such an analysis.
Other than its contention that the "Permanent Withdrawal" fee is an illegal penalty *389 provision, Berens and Tate provides no other argument as to why the provision is unenforceable. The record reflects that both Berens and Tate and Iron Mountain are experienced in business. And we have been reluctant to modify contracts between parties with business experience, as opposed to contracts between consumers and skilled corporate parties.[11] Having found that the "Permanent Withdrawal" fee is not a liquidated damages clause nor a penalty provision, we also find no basis to conclude that the "Permanent Withdrawal" provision is otherwise unenforceable.
[11, 12] Without question, the "Permanent Withdrawal" fee is a relatively high price for a comparatively inexpensive service to be performed by Iron Mountain. Nevertheless, except in limited circumstances not present here, business operators are free to establish the prices they want for their services, and the law will generally enforce an agreement to pay such a price. While Berens and Tate may, in retrospect, be dissatisfied with the bargained-for provision it entered into, we will not rewrite the contract to provide terms contrary to those which are expressed.[12] Nor is it the province of a court to rewrite a contract to reflect the court's view of a fair bargain.[13] Berens and Tate must be held to the plain language of the agreement it entered into, and the district court erred in finding otherwise.
Our conclusion that the "Permanent Withdrawal" fee is an enforceable contractual provision is dispositive of this appeal. Therefore, we do not address Iron Mountain's remaining assignment of error.

CONCLUSION
The district court erred in finding that the "Permanent Withdrawal" fee was unenforceable. We conclude that the "Permanent Withdrawal" fee is neither a liquidated damages clause nor an illegal penalty provision. Rather, the provision is an enforceable contractual term that sets forth the payment required for services to be performed under the contract. The judgment of the district court is reversed.
REVERSED.
NOTES
[1] Growney v. C M H Real Estate Co., 195 Neb. 398, 238 N.W.2d 240 (1976).
[2] Peterson v. Ohio Casualty Group, 272 Neb. 700, 724 N.W.2d 765 (2006).
[3] Abel Constr. Co. v. School Dist. of Seward, 188 Neb. 166, 195 N.W.2d 744 (1972).
[4] Reichert v. Rubloff Hammond, L.L.C., 264 Neb. 16, 24, 645 N.W.2d 519, 527 (2002) (emphasis supplied), quoting Kozlik v. Emelco, Inc., 240 Neb. 525, 483 N.W.2d 114 (1992).
[5] Kozlik v. Emelco, Inc., supra note 4, 240 Neb. at 536-37, 483 N.W.2d at 121 (emphasis supplied) (emphasis omitted), quoting Growney v. C M H Real Estate Co., supra note 1. See, also, Stanford Motor Co. v. Westman, 151 Neb. 850, 39 N.W.2d 841 (1949).
[6] Reichert v. Rubloff Hammond, L.L.C., supra note 4, 264 Neb. at 24, 645 N.W.2d at 527 (emphasis supplied), quoting Kozlik v. Emelco, Inc., supra note 4.
[7] See, Kirby v. United States, 260 U.S. 423, 43 S.Ct. 144, 67 L.Ed. 329 (1922); Permian Petroleum Co. v. Petroleos Mexicanos, 934 F.2d 635 (5th Cir.1991); Varney Business Services, Inc. v. Pottroff, 275 Kan. 20, 59 P.3d 1003 (2002); Preyer v. Parker, 257 N.C. 440, 125 S.E.2d 916 (1962); B.F. Saul Real Estate Inv. Trust v. McGovern, 683 S.W.2d 531 (Tex.App. 1984).
[8] Kirby v. United States, supra note 7.
[9] Id., 260 U.S. at 427, 43 S.Ct. 144.
[10] B.F. Saul Real Estate Inv. Trust v. McGovern, supra note 7, 683 S.W.2d at 534.
[11] See, Myers v. Nebraska Invest. Council, 272 Neb. 669, 724 N.W.2d 776 (2006); Reichert v. Rubloff Hammond, L.L.C., supra note 4; Darr v. D.R.S. Investments, 232 Neb. 507, 441 N.W.2d 197 (1989).
[12] See, Pennfield Oil Co. v. Winstrom, 272 Neb. 219, 720 N.W.2d 886 (2006); Husen v. Husen, 241 Neb. 10, 487 N.W.2d 269 (1992).
[13] Wurst v. Blue River Bank, 235 Neb. 197, 454 N.W.2d 665 (1990).