IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

COMPUTER SUPPORT SERVS. V. VACCINATION SERVS.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

COMPUTER SUPPORT SERVICES, INC., DOING BUSINESS AS CYZAP,
APPELLANT AND CROSS-APPELLEE,

V.

VACCINATION SERVICES OF AMERICA, INC., DOING BUSINESS AS TOTALWELLNESS,
APPELLEE AND CROSS-APPELLANT.

Filed May 23, 2017.    No. A-16-460.

Appeal from the District Court for Douglas County: HORACIO J. WHEELOCK, Judge. Affirmed.

Martin P. Pelster and Steven G. Ranum, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C., for appellant.

Heather S. Voegele and Julie Schultz Self, of Dvorak & Donovan Law Group, L.L.C., for appellee.

INBODY, RIEDMANN, and ARTERBURN, Judges.

ARTERBURN, Judge.

### INTRODUCTION

This appeal addresses the question of the enforceability of a contractual provision for liquidated damages. The district court determined that the liquidated damages provision was actually an unenforceable penalty and granted summary judgment in favor of Vaccination Services of America, Inc., doing business as TotalWellness and against Computer Support Services, Inc., doing business as Cyzap. The court also granted summary judgment in favor of Cyzap on TotalWellness' claims that the entire contract between the parties was void due to duress and that,

as a result, Cyzap was unjustly enriched by the monthly fees paid by TotalWellness. Cyzap appeals and TotalWellness cross-appeals from the district court's decision. For the reasons set forth herein, we affirm.

BACKGROUND

Cyzap is a provider of information technology products and services, including, website development, consulting, and technology support. TotalWellness provides wellness screenings and vaccinations for the employees of their clients. The business relationship between Cyzap and TotalWellness began in approximately 2000. At that time, Cyzap provided TotalWellness with the information technology services that were specifically requested by TotalWellness. There was no contractual arrangement between the parties.

In 2002, Cyzap and TotalWellness entered into a partnership "for the developing, marketing, and hosting of a web-based online scheduling service." Cyzap provided the information technology services for this venture and TotalWellness worked on the marketing and worked to acquire a customer base. During the time that Cyzap and TotalWellness were partners in this joint venture, Cyzap continued to provide TotalWellness with general information technology services for its other endeavors. Cyzap charged TotalWellness $400 per month for these services.

In 2009, TotalWellness started a new "business venture," referred to as the "Health Risk Assessment," and asked Cyzap to provide information technology services to support this venture. Cyzap and TotalWellness signed a written contract, which provided that Cyzap would provide TotalWellness with information technology services for the Health Risk Assessment, and TotalWellness would pay Cyzap $2,917 per month for those services. At this time, TotalWellness was continuing to pay to Cyzap $400 per month for general information technology services.

Sometime in 2012, Cyzap and TotalWellness began discussions to terminate their partnership for the online scheduling service. At around this same time, TotalWellness notified Cyzap that it no longer needed its services for the Health Risk Assessment. As such, by the summer of 2012, TotalWellness was only in need of general information technology services from Cyzap. At this time, TotalWellness continued to pay $400 per month for these services. In October 2012, Cyzap suspended its services to TotalWellness because Cyzap believed TotalWellness owed it a significant amount of money pursuant to their previous contract for the Health Risk Assessment.

Cyzap resumed services for TotalWellness immediately after Cyzap and TotalWellness signed a System License and Service Agreement (the agreement). This agreement is the focus of the current appeal. In the agreement, Cyzap agreed to provide to TotalWellness information technology services and support. TotalWellness agreed to pay to Cyzap $3,500 per month for its services. The agreement provided that "The Hosting and Support Term" was to begin on October 1, 2012, and continue for 12 months from that date. The agreement would be automatically renewed for a consecutive 12 month term unless either party notified the other party at least 120 days prior to the end of the original term. Stated another way, if either party wanted to terminate the agreement after the first term, it would have had to notify the other party on or before June 1, 2013.

The agreement also provided that TotalWellness could terminate the agreement at any time; however, if TotalWellness terminated the agreement "early" and "for any reason other than

Cyzap's breach or failure to perform its services as per the terms and conditions of this Agreement[,]" then TotalWellness would owe Cyzap "liquidated damages." Section 9.1.1 of the agreement explains the calculation of the liquidated damages as follows:

In this event, [TotalWellness] will owe to Cyzap the balance amount which be [sic] the total of the monthly fees owed by [TotalWellness] at the time of such termination multiplied by the total number of months remaining in the current term, as specified in the Hosting and Support provision herein.

Cyzap will retain all payments made to date under the terms of this Agreement and the balance amount (calculated above) as "liquidated damages" and such monies will not be treated as a "Penalty."

Neither party notified the other party of its intent to terminate the agreement on or before June 1, 2013. However, on September 3, 2013, TotalWellness sent Cyzap a letter notifying Cyzap that TotalWellness was terminating the agreement "immediately." In the letter, TotalWellness indicated that it had signed the agreement "under significant duress" because at the time of the signing, it needed Cyzap to reconnect its services. It also indicated that it believed that Cyzap was being significantly overpaid for the services it provided to TotalWellness.

On November 21, 2013, Cyzap filed a complaint in the district court. In the complaint, Cyzap alleged that TotalWellness owed Cyzap $45,500 in liquidated damages as a result of its "Early Termination" of the agreement on September 3, 2013. Specifically, Cyzap alleged that because neither party had given timely notice of its intent to terminate the agreement after the first term that the agreement had automatically renewed for a second 12 month term, which would terminate on September 30, 2014. As a result of the automatic renewal, in September 2013, when TotalWellness notified Cyzap of its intent to terminate the agreement, 13 months remained until the expiration of the agreement. Cyzap asserted that pursuant to the terms of the agreement, TotalWellness owed its monthly payment of $3,500 for each of the 13 months remaining until the expiration of the agreement. When Cyzap demanded that TotalWellness pay what was due, TotalWellness refused.

On December 20, 2013, TotalWellness filed an answer and a counterclaim. Therein, TotalWellness denied that it owed Cyzap any money. It alleged that the agreement was void because "TotalWellness signed the Agreement under duress." In addition, it alleged that the monthly fee that Cyzap charged TotalWellness under the agreement was unconscionable. TotalWellness asked that it be awarded the difference between the fair market value of the services it received from Cyzap and the $3,500 per month it had paid to TotalWellness. TotalWellness calculated this amount to total $34,100.

On February 23, 2016, Cyzap filed a motion for summary judgment. A few weeks later, on March 14, 2016, TotalWellness also filed a motion for summary judgment. A hearing was held on the motions in March 2016. At the hearing, each party offered multiple exhibits which detailed the history between the parties' business relationship, as we described above; explained the terms of the 2012 agreement at issue in this case; and provided a calculation of the damages incurred by Cyzap after TotalWellness terminated the agreement.

The evidence presented by Cyzap indicated that $3,500 per month was a reasonable fee for the information technology services provided to TotalWellness. In fact, Cyzap's president, Gunnit

Khurana, stated in his affidavit, "The amount of $3,500 was actually too low a price considering the costs that [Cyzap] was facing, but I charged $3,500 per month because [the president of TotalWellness] was a friend and he asked me to have [Cyzap] continue to provide the Hosting and Support Services." In order to support its claim that $3,500 per month was a reasonable fee, Cyzap submitted a list of the costs it incurred in supplying TotalWellness with information technology services. According to that list, Cyzap incurred costs of between $4,200 and $8,625 per month in order to provide information technology services to TotalWellness. Cyzap estimated that its "actual total loss as a result of the Agreement was $82,094.77."

Khurana also stated in his affidavit that the only reason Cyzap previously provided general information technology services to TotalWellness for a monthly fee of $400 was because of Cyzap's and TotalWellness' partnership for the online scheduling service. Khurana explained,

> The $400 charge for the Hosting and Support Services in no way reflected the market value for those services or our actual cost. The $400 price existed only because [Cyzap] partnered with [TotalWellness] in the Partnership, and the revenues associated with the Partnership were sufficient to cover the costs associated with providing the Hosting and Support Services. Furthermore, from a technical aspect, the Hosting and Support Services "piggy-backed" on the IT infrastructure used by the Partnership. In other words, we were able to use some of the same hardware for the Hosting and Support Services that we were using for the Partnership, and the staff used to support the Partnership could also be allocated to support the Hosting and Support Services.

When the partnership between Cyzap and TotalWellness ended, Khurana informed TotalWellness that the monthly fee for its information technology services would have to be increased.

Cyzap also presented evidence that after TotalWellness terminated the 2012 agreement with Cyzap, it procured information technology services from a different company at a rate of $2,662 per month. Khurana indicated in his affidavit that TotalWellness' new information technology provider is responsible for only a "subset of the hosting and support services that [Cyzap] previously provided to [TotalWellness]."

Cyzap also presented evidence about the damages it incurred because of TotalWellness' decision to terminate the 2012 agreement in September 2013. Khurana stated in his affidavit that when the 2012 agreement between Cyzap and TotalWellness automatically renewed in June 2013 because neither party provided timely notice of termination, Cyzap incurred expenses in its preparation to perform another year of information technology services for TotalWellness. Specifically, Khurana indicated that after the agreement automatically renewed, Cyzap "took steps to renew its . . . internet connection and continue to operate the Omaha data-center (including maintaining employees that would have otherwise been terminated)." When TotalWellness did terminate the agreement in September 2013, Cyzap expended money to close out the services it provided to TotalWellness, this included paying an early termination fee of $2,770.77 to its internet service provider.

The evidence presented by TotalWellness at the summary judgment hearing focused primarily on its belief that the 2012 agreement was not valid because TotalWellness had been

forced to sign the agreement. Specifically, TotalWellness presented evidence to demonstrate that just prior to the time that the agreement was signed, Cyzap had discontinued providing information technology services to TotalWellness. As a result of this discontinuation of services, TotalWellness feared losing its client base and going out of business. In addition, one client in particular had threatened to bring a lawsuit against TotalWellness if that client was unable to utilize TotalWellness' online services. TotalWellness provided evidence to demonstrate that Cyzap was aware of the problems caused by discontinuing services to TotalWellness. However, Cyzap discontinued the services anyway and forced TotalWellness to sign the 2012 agreement in order to resume services.

TotalWellness also presented evidence to demonstrate that Cyzap did not incur any actual damages as a result of TotalWellness' decision to terminate the 2012 agreement in September 2013. This evidence indicated that Cyzap actually saved money by not having to perform its duties under the contract any longer.

After the hearing, the district court entered a detailed order. In the order, the court found that the "liquidated damages" contemplated by Section 9.1.1 of the agreement, which accrued due to an "early termination" of the agreement by TotalWellness, actually constituted an unenforceable penalty. Specifically, the court found, "The $45,500 stipulated amount is neither a reasonable estimate of the damages which was caused by the breach, nor is it reasonably proportionate to the damages which have actually been caused by the breach." The court granted summary judgment in favor of TotalWellness on Cyzap's claim that it was owed $45,500. The court went on to grant summary judgment in favor of Cyzap on TotalWellness' counterclaims. The court found that the agreement between the parties was enforceable and that, as a result, TotalWellness' claims failed as a matter of law.

Cyzap appeals and TotalWellness cross-appeals.

ASSIGNMENTS OF ERROR

On appeal, Cyzap asserts, restated and consolidated, that the district court erred in finding that the liquidated damages provision in the contract actually constituted an unenforceable penalty and in granting summary judgment in favor of TotalWellness on that issue.

On cross-appeal, TotalWellness asserts that the district court erred in granting summary judgment in favor of Cyzap on TotalWellness' claims that the contract was void and that Cyzap was unjustly enriched by the monthly fees paid by TotalWellness.

STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Oldfield v. Nebraska Machinery Co.*, 296 Neb. 469, ___ N.W.2d ___ (2017). An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Id.*

Generally, the question whether a sum mentioned in a contract is to be considered as liquidated damages or as a penalty is a question of law, dependent on the construction of the contract by the court. *Berens and Tate, P.C. v. Iron Mountain Information Management, Inc.*, 275 Neb. 425, 747 N.W.2d 383 (2008).

ANALYSIS

CYZAP'S APPEAL

The question presented in Cyzap's appeal is whether section 9.1.1 of the agreement, which requires TotalWellness to pay damages to Cyzap if TotalWellness terminates the agreement early, is an enforceable contractual provision. Cyzap contends that it is enforceable because that section requires TotalWellness to pay an easily calculable amount of liquidated damages in the event of an early termination. TotalWellness contends that the section is not enforceable because it requires TotalWellness to pay a penalty in the event of early termination. The district court determined that section 9.1.1 of the agreement constituted an unenforceable penalty provision and, as a result, granted summary judgment in favor of TotalWellness on this issue. Upon our review, we affirm the decision of the district court.

We do briefly note that, in its brief on appeal, Cyzap argues that we need not analyze this appeal under the rubric of whether section 9.1.1 is a liquidated damages clause or an unenforceable penalty provision because such an analysis is only necessary when there has been a breach of the agreement. See brief for appellant at 11-12. Cyzap further argues that TotalWellness did not actually "breach" the agreement by deciding to terminate the agreement "early" because, pursuant to the language of the agreement, TotalWellness was permitted to terminate the agreement at any time. *Id.* We find this argument to be without merit.

Although a party's untimely termination of the agreement is contemplated by the express terms of the agreement, such an untimely termination still constitutes a breach. The agreement is clear that in order to terminate without having to pay any damages or any penalty, a party must notify the other party of termination at least 120 days prior to the end of the term of the agreement. If a party did not timely notify the other party of termination, there would then be consequences for any such termination. Accordingly, any untimely termination constitutes a breach of the agreement between the parties.

We now turn to our analysis of Section 9.1.1 of the agreement and whether such section contemplates liquidated damages or constitutes an unenforceable penalty provision for TotalWellness' breach of the agreement.

The Nebraska Supreme Court describes liquidated damages as follows:

A stipulated sum is for liquidated damages only (1) where the damages which the parties might reasonably anticipate are difficult to ascertain because of their indefiniteness or uncertainty and (2) where the amount stipulated is either a reasonable estimate of the damages which would probably be caused by a breach or is reasonably proportionate to the damages which have actually been caused by the breach.

*Berens and Tate, P.C., supra*. The reasonableness of the stipulated damages can be judged as of the time the contract was formed. *Kozlik v. Emelco, Inc.*, 240 Neb. 525, 483 N.W.2d 114 (1992). The Supreme Court has consistently upheld the right of contracting parties to privately bargain for the amount of damages to be paid in the event of a breach of contract, provided the stipulated sum is reasonable in light of the circumstances. *Berens and Tate, P.C., supra*; *Kozlik v. Emelco, Inc., supra*.

In this case, the district court found, "The $45,500 stipulated amount is neither a reasonable estimate of the damages which was caused by the breach, nor is it reasonably proportionate to the damages which have actually been caused by the breach." Upon our review of the record, and giving Cyzap the benefit of all reasonable inferences deducible from the evidence, we agree with the finding of the district court.

At the summary judgment hearing, Cyzap offered into evidence a spreadsheet delineating all of the costs associated with providing TotalWellness information technology services. These costs included internet fees, employee wages, rent, and equipment maintenance. As a part of this spreadsheet, Cyzap included the costs associated with terminating its services to TotalWellness after TotalWellness terminated the agreement in September 2013. These costs included an early termination fee for internet services; employee wages through March 2014; rent through March 2014; and equipment maintenance in September and October 2013. In total, after September 2013, Cyzap incurred costs in the amount of $21,045.37. Cyzap's actual damages of $21,045.37 total less than half of the $45,500 in liquidated damages contemplated by the agreement.

Moreover, the evidence presented at the summary judgment hearing revealed that Cyzap was actually losing money under the terms of the agreement. Cyzap presented a great deal of evidence to prove that the $3,500 per month it charged TotalWellness for information technology services did not even cover the monthly costs Cyzap incurred to provide these services. Arguably, then, since Cyzap was able to terminate its ongoing costs associated with the agreement, it financially benefited from TotalWellness' decision to terminate the agreement in September 2013. This financial benefit further diminishes the actual damages incurred by Cyzap as a result of the early termination.

The evidence offered at the summary judgment hearing clearly demonstrates that the $45,500 in damages calculated pursuant to Section 9.1.1 of the agreement provided Cyzap much more compensation than any losses the company actually suffered as a result of TotalWellness' decision to terminate the agreement in September 2013. As the district court stated, "A liquidated damages clause is not intended to provide a windfall, as it would in this case, but rather it is to justly compensate a party for damages that are difficult to measure." Based upon our review, we find that Section 9.1.1 of the agreement did not provide a reasonable estimate of the damages which would probably be caused by a breach nor did it provide a calculation of damages which was reasonably proportionate to the damages which were actually caused by TotalWellness' early termination of the agreement. Accordingly, we conclude that Section 9.1.1 of the agreement constitutes an unenforceable penalty provision and not a liquidated damages clause. We affirm the decision of the district court which granted summary judgment in favor of TotalWellness on Cyzap's claim that it was owed $45,500.

In its cross-appeal, TotalWellness asserts that the district court erred in granting summary judgment to Cyzap on TotalWellness' counterclaims that the 2012 agreement was not valid because TotalWellness signed it while under duress and that the price increase for Cyzap's information technology services contemplated by the agreement was not reasonable and was "unconscionable." See brief for appellant at 24-25. We find TotalWellness' assertions on cross-appeal to be without merit.

To be voidable because of duress, an agreement must not only be obtained by means of the pressure brought to bear, but the agreement itself must be unjust, unconscionable, or illegal. *Kosmicki v. State*, 264 Neb. 887, 652 N.W.2d 883 (2002). The essence of duress is the surrender to unlawful or unconscionable demands. *Id*. It cannot be predicated upon demands which are lawful or the threat to do that which the demanding party has a legal right to do. *Id*.

TotalWellness asserts that it signed the 2012 agreement while under duress because Cyzap had terminated the information technology services it provided to TotalWellness and these services were essential to TotalWellness' business operations. TotalWellness claims that unless it signed the agreement and contracted to pay $3,500 per month for Cyzap's services, TotalWellness would have gone out of business. While the record reveals that TotalWellness did enter into the 2012 agreement at a time when Cyzap had terminated its information technology services, the record also reveals that Cyzap had a right to terminate those services.

Prior to the 2012 agreement, TotalWellness and Cyzap did not have an agreement or a contract concerning the general information technology services that Cyzap was providing to TotalWellness. Rather, Cyzap charged TotalWellness $400 per month based on its other endeavors with TotalWellness, including the partnership between the two companies. When this partnership ended, Cyzap informed TotalWellness that it needed to renegotiate the monthly fees for the general information technology services. TotalWellness, apparently, did not ever enter into such negotiations. Instead, Cyzap determined that it could no longer provide the services to TotalWellness for a fee of $400 per month and it suspended the services. Because there was no contractual obligation to continue to provide these services, Cyzap had a legal right to discontinue providing the services.

Moreover, there was no evidence presented at the summary judgment hearing to support TotalWellness' assertion that the 2012 agreement was unjust, unconscionable, or illegal. Rather, the evidence presented at the summary judgment hearing revealed that the monthly fee of $3,500 per month Cyzap charged to TotalWellness was not unreasonable or unconscionable, even though it was a significant price increase. As we explained above, the previous monthly fee of $400 was based more on the companies' relationship with each other than it was on the actual cost of providing TotalWellness with information technology services. Cyzap provided detailed information about all of the costs that went into providing TotalWellness with its services. This information revealed that it actually cost Cyzap more than $3,500 per month to provide TotalWellness with information technology services. In addition, other evidence presented at the hearing revealed that TotalWellness had recently entered into a new agreement with a new information technology company. The monthly fees under the new agreement are much closer to

the $3,500 per month TotalWellness paid to Cyzap under the 2012 agreement, than the $400 per month TotalWellness paid to Cyzap prior to the 2012 agreement.

Based upon our review of the record, and viewing the evidence in the light most favorable to TotalWellness, we cannot say that the district court erred in granting summary judgment in favor of Cyzap on TotalWellness' counterclaims. There is simply no evidence to support TotalWellness' assertions that the agreement was signed while it was under duress, nor is there any evidence to demonstrate that the agreement was unjust, unconscionable, or illegal. We affirm the decision of the district court.

## CONCLUSION

We affirm the decision of the district court which granted summary judgment in favor of TotalWellness on Cyzap's claim that it was owed $45,500 and which granted summary judgment in favor of Cyzap on TotalWellness' counterclaims.

AFFIRMED.